LEMUEL H. ARNOLD, et al. vs. SARAH B. RUGGLES.

Shares in the stock of a corporation are personal property and *choses in action* or of the nature of *choses in action.*

Where by a judgment in partition, certain shares in the stock of a corporation were set off to the husband and the wife in her right, the said shares having come to the wife by devise previous to marriage, *it was held*, that the judgment only suspended her power over them, during her susband's life, by recognizing his marital rights, and that to have made the property absolute in himself, he should have transferred them to his own name.

THIS was an appeal from the decree of the Town Council of North Providence, allowing the accounts of Sarah B. Ruggles, as administratrix upon the estate of her husband. All the facts requisite to an understanding of the case are set forth in the opinion of the Court.

B. HAZARD and C. F. TILLINGHAST, for the appellants.

J. WHIPPLE and P. PRATT, for the appellees.

DURFEE, C. J.—The first question presented to the Court by the statement of facts and arguments of coun-

sel is, are the shares of stock in the Washington Bridge Society to be considered as of the real or personal estate ? In other words, are they property that passes to the heir directly, or to the executor or administrator ? . The society is a corporation, and, as a corporation, it is in law a person capable of owning both real and personal estate. To create a body corporate, the law recognizes a number of persons associated for a particular purpose as a whole, as an entirety ; and this whole or entirety it recognizes as a single person, having in law, for particular purposes, the capabilities of a natural person. And this person, thus constituted, it considers as immortal and as distinct from any of the natural persons, which go to constitute its present form, as the mind or will of the natural person is distinct from the hand or the arm.— This ideal person may have an absolute estate in fee simple—a title unconditional, carrying with it everything appurtenant thereto ; but what it thus has or owns, no other person can at the same time have or own. It is not even the trustee of any one, so far as the title is concerned. But the corporation of itself consumes nothing and may acquire much, and of these acquirements it may be a trustee and its members the cestui que trust, among whom those acquirements should be distributed.

There can be no doubt but that this bridge and the lands and tenements owned with it, are the real estate of this ideal or legal person. We make no question, whether the proprietors on each side of the stream granted lands to the corporation or not ; it is enough, for the present purpose, that to the State alone belonged the right and power to construct a bridge across a navigable river, and that the soil, over which that navigable river flowed, belonged to the State for that purpose, and that

Lemuel H. Arnold, et at, *v.* Sarah B. Ruggles.

the State granted this right, power, and interest, to this legal person. There can be as little doubt but that the right of taking toll—a right, granted at the same time, exercisable over and in this real property and wholly dependent on it, must also be regarded as savoring of the realty, and, therefore, as a real franchise in the corporation. But all this was the absolute and unqualified property of the corporation, made so by the grant, and of no other person or persons whatever. But if this be so, the question still is, what are these rights or interests denominated shares in the stockholders ? They are not carved out of the absolute title of the corporation, they do not in any way limit or encumber its interest in the realty. The shareholders have not even the usufruct of the realty, until it has been reduced by the corporation to money or personalty. If all or either of these were to join in one action for any wrong done to the estate of the corporation, they could not be known in a court of law, as having any interest in it. In a legal sense, therefore, the real property of the corporation is as distinct from the shares of the stockholders, as the corporation itself is, as a legal person, distinct from the shareholders as natural persons. Every one of and all these natural persons may transfer their shares, and yet the corporation subsist and its title to its property remain undisturbed.

What then are the shares, if they are not parts of the property of the corporation ? A right to vote and a right to a dividend of the profits of the whole concern of the corporation, real and personal, when struck, together with corresponding liabilities is all that makes up or constitutes what is commonly called a share. Is a share, then, thus made up, to be deemed real estate, or as

necessarily partaking of the realty ? A share must pass one way or the other, as an entire thing. It cannot be resolved into the elements, of which the estates of the corporation consist, and a part pass to the heir and a part to the executor, without destroying it and with it the whole concern. It is an entirety and must be either real or personal. And which is it ? It will not do to make the property of the corporation a criterion, for the property of almost every corporation is more or less mixed. We must make the share itself,—those rights, which constitute its beneficial interests, the criterion.— Its right then to receive a dividend of the whole concern, whether real or personal, is the interest, by which it is to be judged. But suppose the profits arise wholly from tolls, which we have already said savor of the realty, does that necessarily make the dividend a part of the realty. We think not. It is the corporation, that demands the toll, and it is the passenger, that pays it. It is toll in exaction and in payment—but when in the treasury of the corporation, it is then but money, blended with other funds arising from other sources and all subject to future distribution, in the shape of dividends.— If a shareholder bring his action for his dividend, he would claim by the order of distribution, and, unlike an action for rent, no question, as we believe, could arise in reference to the title to the realty.

The mode of taxation affords a good criterion to determine the nature of property. The power of taxation is a sovereign power. It ascertains the character of every thing that it touches. But if the shares of the individual stockholders, in turnpikes, railroads, canals and bridges, passing through different towns, as they do, are to be deemed real estate and taxed in the several towns

Lemuel H. Arnold, et al, *v.* Sarah B. Ruggles.

as shares, such tax cannot under our present system, be enforced.    It is quite evident, under our present system, this real estate can be taxed only as the property of the corporation.

Neither does the legislature, either in public or private acts, regard them as other than personal property.    We have examined a number of acts of incorporation, and have found but two instances, in which shares were expressly declared to be personal property, and in those two instances—the Lonsdale and Scituate manufacturing companies—that declaration was made necessary by the singular provision, that the shares should be trans· ferred in the same manner as real estate.

Bank property is both real and personal, yet no one doubts that a bank share is personal property, and it is so either from the nature of the thing itself, or by legal implication, and not from any express provision of the charter.    We have seen no bank charter which contains any such express provision.    The charter, granted 1791, incorporating the Providence Bank, contains this provision : " That the directors may, at all times, know the proprietors of the bank, no sale or conveyance, whatever, of any share in the bank shall be deemed good, but such as may be entered on the bank books."    The charter of the Bank of Rhode-Island, granted 1795, provides that the stock or shares shall be transferable only at bank, in a form prescribed by the directors.    We have examined other bank charters, that contain equivalent provisions, but, as far as we have examined, no charter expressly declares that the shares are to be deemed personal property.

We believe this will generally be found true, also, of Turnpike and Bridge companies incorporated.    We say

on what we deem good authority, (for we have not seen the act,) that the first charter granted in the State for the construction of a turnpike, contains no provision for the transfer of shares, and none declaring them personal property ; yet the shares have always been treated as personal property and are transferred by assignment, entered in the books of the company.

It is not, therefore, true that the charters of all, and probably not even of most, of the corporations in this State declare their stock or shares to be personal property.    What then is the inference ?    One inference is undoubtedly this, that in this State it has been generally taken for granted, that stock or shares are personal property and that courts and legislatures have so regarded them, in the judgments which they have rendered and the laws which they have passed.    But let it be that they are not in themselves personal property, but that they are made such by implication arising from the words of their charters.    Then the words, which give by implication the shares a personal character, must be words which prescribe the mode of transfer.    But then an implication equally strong will be found to arise from the words of general law of this State, applicable to all stock or shares in corporations.    The 15th section of the act to enable creditors to recover their just debts of persons, absent from or concealed within the State, and for other purposes, provides that the stock or shares of any person or persons, whatever, in any incorporated company within this State, shall be liable to be attached on execution, duly obtained, like other personal property ; and then refers to the next preceeding section for the mode of levying, advertising, selling and transferring such property ; and that section (which pro-

vides for the attachment of stock belonging to persons out of the State,) after providing that the execution shall be served by leaving a copy with the cashier, secretary or treasurer, &c., directs that the property be advertised and sold in the same manner as other personal property attached on execution.    The shares of this company are not exempted from the operation of this act, and they are here treated as personal property, made liable to the execution of any creditor of the shareholder, and are to be sold and transferred by the sheriff, as other personal property.    Surely if turnpike and bank charters, by providing for the transfer of shares on the books of the company, imply that the property is personal, the implication, arising from the words of this general law, is far stronger and cannot be less effectual.    The statute, at any rate, regards all shares in any incorporated company as personal property, and as such, makes them liable to the execution of a creditor.

Thus, whether we consider the shares in themselves or with reference to the general course of legislative and judicial proceedings, we are under the necessity of regarding them as personal property.    In deciding thus, however, we desire to be understood, as limiting the decision to corporations of like kind, whose stock is divided by charter into shares, with reference to a division of the profits.    Mere tenants in common of real estate, such as the original proprietors of an incorporated township, might present a different question.

These views render it unnecessary for us to go into a minute examination of the English authorities, cited to this point, or of *Wells vs. Cowles* (2 Conn, 567) which appears to rest mainly upon them.    The English corporations, whose cases are cited, have, by no means, that

fixed and definite character, which marks our own.—
Many of them claim corporate rights by prescription—
many have charters from the king, who has no legisla-
tive power and can grant nothing against common law,
statute or usage.   (See 3. Dane, ch. 143, art. 8, on the
difference between English and American corporations) ;
some of them are created by an act of Parliament, with-
out any formal charter, by simply conferring on a com-
pany and their successors corporate powers, to carry into
effect some particular purpose.   The New River Com-
pany is called a corporation, but even English Judges
speak of its character and powers, with some degree of
uncertainty.   It is said in one authority cited, that an
act of parliament, from which they probably derived
their corporate character, authorized them to cut a trench
in the soil of another, but that they exercised far greater
powers, which must have been given by some act of
parliament to that court unknown.   The origin of the
company for the improvement of the river Avon,  differs
essentially from that of any incorporated company with
us.   Very briefly it may be thus stated.   An act of
Parliament authorized the mayor, aldermen and com-
mon council of Bath, to appoint the Duke of Beaufort
and others commissioners to make the river navigable.
Certain privileges were given by the act, which it is not
necessary here to enumerate.   They neglected to exe-
cute their powers, but, subsequently, appointed the Duke
of Beaufort and others to go on, at their own expense,
and make the river navigable, and transferred to them
and their heirs whatever was given to the grantors by
the aforesaid act of parliament.   The Duke and his as-
sociates, subsequently, entered into an agreement, in
which, among other things, they provide that there shall

be no survivorship, and that the shares shall descend to heirs and devisees ; and, from that time, for a long course, the shares had so passed as an inheritance. Corporations of this stamp have little resemblance to ours, and yet the case in the 2 Conn. bears very hard upon these decisions for support. And it may be noted that the effect of that decision was such, that the legislature of Connecticut was shortly under the necessity of passing an act to remedy the inconveniences occasioned by it ; a fact from which it may be inferred, that the decision was not in harmony with the general tenor of legislation even in that State.

We are, on the whole, inclined to recognize the decision, *Russell, et al, vs. Temple, et al,* (3 Dane, ch. 76. Art. 2. §2.) as at once most consistent with legal reason and the general course of legislation in this State. But this, by no means, settles the question. We decide that the shares are personal property, but of what kind ? Call them chattels personal if you will,—yet chattels personal are of two kinds ; chattels in possession and chattels—technically *choses*—in action. Does a share in a bridge or turnpike stock fall under the former or latter denomination. Does the term, share, denote a thing in possession or does it denote the mere right to a thing, not in possession, but in action, and, therefore, subject to be claimed or demanded ?

We have shown that a right to a vote, as a member of the corporation, and, a right to a dividend of the profits of the concern, make all the beneficial interest, that is called a share. But these rights subsist only in law or contract. The individual invested with them, has them *in presenti,* and in virtue thereof claims things,

that are not at any time all present, uniting possession with right, for all votes save one and all dividends save one must ever exist *in futuro*—a chose not in possession— a thing subject to be demanded—money payable on a future day. A share, then, is a mere ideal thing—it is no portion of matter, it is no portion of space, it is not susceptible of tangible and visible possession, actual or constructive. It is not, therefore, a chattel personal, susceptible of possession, actual or constructive. Yet, in common parlance, we say that a man is possessed of a right, and it is a sufficiently intelligible mode of speaking; but then the meaning of the term possession must be understood to be modified by the object to which it relates. If a right be an ideal thing merely, or something existing but in law or contract, the possession must be ideal—subsisting from law or contract. To be possessed of a share, therefore, is to be invested with the rights which constitute it—to pass in and succeed to the station, relations and powers of the former shareholder and to become a corporator in reference to the particular share. But it is quite evident, that this cannot be accomplished but by actual transfer, or by operation of law. This and this only can give (in common parlance) the possession of a mere right or of those rights denominated a share in a corporation. And it appears to us, in the present case, that nothing but the investiture of the husband, by transfer or operation of law, with those rights, denominated the shares of the wife, could form a complete reduction of them to his possession and bar the wife's survivorship—be they choses in action or something only in the nature of choses in action. And they must be the one or the other since they exist only in law or contract.

The nature of the things themselves and the many decisions, recognizing shares or rights of this description, as choses in action or things in the nature of choses in action, leave us no choice and forbid our regarding them in any other light.   Should we do so, we should certainly introduce very unexpected confusion into a mass of property in this State existing in this form.— The decisive question then is, were these shares now claimed by Mrs. Ruggles, at any time during coverture, reduced by her husband to his possession.   Did he, by force of the marriage contract or by the subsequent judgment of partition, become invested absolutely with these rights or shares and so a member of the corporation in his own right.

By the marriage, Mr. Ruggles became the absolute owner of all chattels personal in possession, belonging to his wife, and had such an interest in all choses in action or rights existing merely in law or contract, as to be able at any time to reduce them to his possession, if susceptible of being so reduced.   But it is to be recollected, that this is a power which may or may not, as he chooses, be exercised.   The law makes the husband absolute owner of her personal property in possession. It imposes it upon him—he has no choice—it is his, he willing or not willing—and on his decease, goes to his administrator.   So this power over her choses in action or rights existing merely in contract, is a power which the law imposes upon him, but it leaves him at liberty to exercise it or not, as he chooses.   Was this power then exercised by Mr. Ruggles over these shares, and what would be such an exercise of it in him ?

These shares stood in the name of J. B. Mason, the father of Mrs. Ruggles.   He, by his last will and testa-

ment, devised and bequeathed all his real and personal estate to his wife, and, after her, to his three daughters.— One of the daughters dies, the mother dies, and the whole property eventually comes to the two daughters, Sarah B. and Rosa Anne. We take no notice of the marriage of the deceased daughters or the intermediate transfers ; we state merely the result, as to these shares, for the purpose of ascertaining how they have stood and who has had the disposition of them. They stood then in the name of Mr. Mason. By his will, his widow Alice and his brother Amasa Mason became his executors, to whom these shares passed as assets. Upon the death of Alice, these shares were assets in Amasa, the surviving executor, and, whilst thus subject to his disposition, Sarah B. becomes the wife of G. B. Ruggles. It is not perceived that the disposing power over these shares has yet passed from the executor. They form a portion of the personal estate, bequeathed by their father, of which each of the daughters is entitled to a moiety, and that moiety, like other distributive shares or legacies, is a chose in action. In this state of things, Ruggles and wife and Rosa Anne, a minor, by her guardian Amasa Mason, prefer a petition to the Court of Common Pleas in the county of Providence, May term, 1826, setting forth that they are tenants in common of certain real estate, therein described, and praying for the appointment of certain commissioners for the partition thereof. They then further proceed to represent, that they hold and are possessed as tenants in common of certain personal estate, naming these bridge shares and certain turnpike shares, and stating, that they have agreed that the same commissioners shall divide and assign to each her share or proportion thereof.

And here it may be remarked that the executor, as executor, does not appear as a party to this agreement, nor does he appear to have executed any transfers of these shares. If they pass immediately by the will and no transfer from the executor be necessary to complete the investiture, then they must pass as real estate or chattels in possession, both of which suppositions are contrary to the conclusions to which we have come. But if a transfer from the executor were necessary, the investiture is still incomplete and this would, at once, terminate our investigation and decide the case against the appellants, but we choose to decide upon the points upon which it has been argued, and, therefore, consider the subsequent proceedings.

The commissioners, in their report, set off the shares in question in the following words : " To the said George B. Ruggles and Sarah B. his wife, in her right, one half part of one hundred and nine shares or one hundred and sixty-nine parts of all the property, whether real or personal, belonging to the company or corporation, known and called by the name of the Providence Washington Bridge Society." This report is received by the Court and judgment rendered, establishing the same.

Did the marriage or did the judgment invest Mr. Ruggles with these shares and the consequent powers of a member of the corporation in his own right ? The marriage did not, for the shares still stood in the name of the testator, and so were subject to the disposition of his executor. They were assets in his hands, constituting a part of the surplus to be distributed, and a distributive share is a chose in action. But taking it for granted, as it appears to be taken by the parties, that the above judgment did legally distribute and assign the shares, the

question is, what is the legal effect of those proceedings and the judgment thereon ?

There is no way to avoid the effect of the words of this report.    They are technical—of definite and certain meaning.    The 54 1-2 shares were set off to G. B. Ruggles and Sarah B. his wife in her right—that is, rights to vote and receive dividends, made certain by that number, were set off to husband and wife in right of the wife.    In partition, tenants in common recover things in kind, and rights are no otherwise altered than that, whatever was before in common is, after the judgment, in severalty.    The 54 1-2 shares, therefore, if choses or of the nature of choses in action, continued after the judgment as they had been before, saving that they now stood in the name of Ruggles and wife, in the right of the wife, and not in the name of J. B. Mason and subject to the disposition of his executor.

Now what is the effect of this language, used in a legal proceeding, before a court of law.    We conceive that it alters not the nature of the wife's interest in the things to which it relates, but only suspends her power over them, by recognizing the marital rights of the husband.    Choses in action may remain in jointure after marriage, though chattels personal cannot.    In virtue of those rights, he might have made the property by transfers absolute in himself.    If he did not, he might vote in a corporation in her right and receive dividends in her right.    Had he survived her, his interest might have been made absolute, perhaps without administering ; but, she surviving him, her power over the property would no longer be suspended, but those powers and her interest become one and identical.    Her interest would no longer be a qualified but an absolute interest, and let-

ters of administration, granted on her husband's estate, would give her no more power over this interest than over the property of a stranger.

And this, we conceive, will hold good of these interests, whether they be considered as rights accruing before or after the marriage; and that, because the judgment does not alter the interest and because that interest is a gift or legacy, which first vests in the wife.