·HARRIET E. BUTLER, Administratrix, &c., Respondent, *v.*
WILLIAM LEE and GEORGE W. NILES, Appellants.

When another application to the court and a further order of the court is neces-
sary to give the parties the full benefit of the judgment or decree of the court,
such judgment or decree is not final, and is not appealable.

APPEAL from an order of the General Term of the Superior
Court of the city of New York, affirming an order of the
Special Term, in an action brought by the plaintiff to compel
an offset of judgments.

The case shows that George W. Niles, one of the defend-
ants, recovered a judgment against the plaintiff's intestate,
Thomas Butler, May 22, 1847, in the New York Common
Pleas, for $141.84; that in September, 1864, Niles commenced
supplemental proceedings on this judgment; that on the 26th
of September, 1862, Niles commenced a creditor's suit upon
the same judgment to reach certain property held in the
name of Harriet E. Butler, in which it was claimed her hus-
band had · an interest; that pending said action and the
supplemental proceedings, Thomas Butler acquired, by assign-
ment, December 15, 1862, two . certain judgments against
Niles, rendered in favor of one Francis Morris; one for
$190.46, rendered in the New York Court of Common Pleas,
June 11, 1859, and the other for $284.30, rendered in the New
York Superior Court July 8, 1859. This action was commenced
in February, 1863, to enforce a set-off of the above judg-
ments.    William Lee was made a party, for the reason that
he claimed to have obtained an assignment of the judgment
against Butler, October 24, 1862.    This. assignment was con-
tested, and not found to be valid as against the plaintiff's
right of set-off.    The action was tried at Special Term before
Chief Justice ROBERTSON in May, 1863.    In the month of July
he made up his findings of law and fact, and on the 11th of
August a formal order was made as of the Special Term,
containing the findings of the judge, in which the judge
decreed that the set-off should be allowed upon certain terms

and conditions therein specified. This seems to have been duly entered and filed with the clerk. In the month of November following, a more formal judgment or decree was made up, approved by the judge and copied into what is known as the judgment roll. The conditions upon which the set-off was allowed were as follows, viz.: "And it is further ordered and adjudged, upon a tender in five days after notice of the judgment, by or in behalf of the plaintiff, to the defendant, of a receipt for so much of the amount due to the former upon the said two judgments assigned to him as aforesaid as shall be equal to the amount due on said judgment against him, together with said costs and expenses (of the supplemental proceedings and the creditor's suit), and also a satisfaction-piece of said judgment, and a consent, to be signed by the defendants, to discontinue said supplemental proceedings and said action on said judgment, and a receipt for the amount of said costs and expenses, they, the said defendants, shall execute such satisfaction-piece and consent and receipt. And it is further adjudged that neither party shall recover against the other any costs in this action. But in case the said plaintiff shall decline or refuse to sign and file such stipulation, it is hereby ordered that such complaint be dismissed, with costs so adjusted, and that the defendants recover costs against the plaintiffs."

On the 22d of July, 1864, E. J. Sherman, the attorney of George W. Niles, made an affidavit, reciting the proceedings, and setting forth, among other things, that he had made a case for a new trial, which, after certain difficulties, had been declared abandoned; that the defendant Lee had procured an attachment against Butler for not appearing before the court to answer as required, by an order granted in proceedings supplemental to execution upon a judgment in the Supreme Court, in favor of one Peter Morris, of which Lee was the assignee, also an *alias* attachment, returnable on the second Monday of July; and after stating several other matters, he says he believes the defendants, in this suit, have a right to enter up a judgment of dismissal of the complaint, on the ground that the plaintiff has not complied with the conditions

specified. He then proceeds to state wherein the plaintiff had made default. A. B. Clark, the attorney of Lee, also made an affidavit, stating, in substance, that he did not believe any stipulation had been served on his client, Lee, since the judgment of November 9th, 1863.

On the foregoing affidavits of Sherman and Clark, Justice GARVIN, of the Superior Court, on the 26th of July, 1866, granted an order at chambers, requiring the plaintiff, Butler, to show cause, before one of the justices at Special Term, on the 29th of July, why leave should not be granted to each of the defendants to enter judgment against the plaintiff, with costs, including an extra allowance. The court, at Special Term, held before the Hon. C. L. MONELL, justice, August 5th, 1864, made an order granting leave to the defendants to enter up judgment in their favor against the plaintiff, with costs, and ten dollars costs of the motion. This order was founded upon the record of the judgment filed November 9th, 1863, and the affidavits of Sherman and Clark, before mentioned. The motion was opposed by A. R. Dyott, but it does not appear that he read any affidavits or papers in opposition. Then follows a formal judgment dismissing the plaintiff's complaint, and an award to each of the defendants of the costs of the defense. This record was filed August 8th, 1864, as a supplement to the original record.

On the 17th day of August, 1864, William H. Meeks, the plaintiff's attorney, made an affidavit, stating, in substance, that he was attorney for plaintiff up to the time of the entry of the judgment of November 9th, and for a short time thereafter, when D. M. Porter, Esq., was substituted in his place; that, on the 9th of July, 1863, he served the defendant Niles with a copy of the order for judgment, as settled by Justice ROBERTSON, with a stipulation made in pursuance of it, and, on the same day, a copy of the same papers was served upon A. B. Clark, Esq., the attorney for Lee; that, on the 17th of July, 1863, he received from defendant Niles a notice of motion to show cause why the finding of the judge should not be amended, which was decided on the 24th of July;

that, on the 9th of November, on the entry of the judgment, he personally served upon Niles a certified copy and notice of said judgment, and, at the same time, a stipulation, as required by the judgment, and tendered to him for his signature a satisfaction-piece and the receipts required by said judgment, among which were two receipts signed by Thomas Butler for the amount of the two judgments assigned to him by Francis Morris, which latter receipt he refused to accept, and he refused to sign the satisfaction-piece of said judgment, as well as the other two receipts, copies of which are contained in the case. He then proceeds to contradict portions of the affidavits of Sherman, heretofore referred to. Thomas Butler made an affidavit, in which he swears that he was unacquainted with the facts stated by Mr. Meeks, at the time the motion was made on behalf of the defendants, for leave to enter up judgment of dismissal of the complaint, and, therefore, he could not communicate them to his attorney therein, D. M. Porter, Esq. On the 29th of August, 1864, D. M. Porter made his affidavit, in which he states that he was substituted as plaintiff's attorney May 3d, 1864; that, although he assisted in the trial of the action, and in the settlement of the judgment, he took no further action, and did not know what had been done; that he was counseled by Butler and Meeks as to the steps to be taken to perform the judgment and compel performance on the part of the defendants, and that he knew that it was the intention of the plaintiff to fully perform the judgment, and he supposed he had until he heard of the defendants' motion for judgment. He further swears that he did not know of the facts stated in Meeks' affidavit until the last motion had been decided, and that he wishes to correct the errors, if any, which have been committed.

Upon these affidavits and the schedules referred to in Meeks' affidavit, together with the judgment record, an order was granted by the Hon. JOHN M. BARBOUR, requiring the defendants to show cause, before the Special Term, on the 8th day of September, why the order made by Justice MONELL, and the judgment entered therein, should not be vacated and

the plaintiff have leave to comply with the original judgment.

Notice of this order having been served, Sherman, on the 1st of September, 1864, made another affidavit, in which he states, in substance, that the paper referred to by him, in his former affidavit, as served upon him, was a certain paper marked A, which was served on the 9th of July; that it appears, by the records of the court, that the order for judgment was filed August 11th, 1863, and the judgment entered November 9th, 1863; that the original stipulation, filed by Butler, was filed July 9th, 1863; and, from a careful examination of the records of the court and index, it appears that no other stipulation was filed. He further swears that no other stipulation was filed or served on him, either at the time of entering judgment, or within six days thereafter, or at any time thereafter, as required by the findings and decision of the judge. A. B. Clark, Lee's attorney, made another affidavit, in which he swore that no stipulation was ever served on him, except the one served July 9th, 1863; and he is informed and believes that no tender was made to his client, or stipulation served on him. William Lee, one of the defendants, also made his affidavit, in which he states that no papers have been served on him, except the summons and complaint. Niles, the other defendant, made an affidavit that he did "decline to execute the satisfaction-piece and consent, &c., referred to in Mr. Meeks' affidavit, for this reason, among others, to wit: that, at the time when such papers were tendered to defendant, December 10th, 1863, the plaintiff in this suit was, and for about six months then past had been, enjoined by an order of a justice of the Supreme Court, in supplemental proceedings, from any interference with, or from the transfer of any portion of his property, and could not legally satisfy the judgment held by the said Butler against this defendant, and had not complied, and could not comply, with the order and conditions imposed by his honor, the chief justice, in his decision and finding of fact herein." He further states that no stipulation was served on him on the 9th of December, or at any other time since July 9th, 1863.

The motion upon the order of Justice BARBOUR to show cause was heard before Chief Justice ROBERTSON, at Special Term, upon all the papers, on the 26th of October, 1864, and the court then ordered and adjudged that the judgment or order made in this action in August, 1864, be vacated, and the former judgment, entered in this action in July, be modified so as to allow the plaintiff five days from the day this order is entered, within which he may be allowed to serve or file the stipulations, consents and documents required by such judgment, with the like effect as if the same had been done within the time therein prescribed, provided the said plaintiff shall, within five days, pay certain motion costs therein specified. It was, also, provided that, if the plaintiff made default, the said motion be denied, with $10 costs. The order also reserved the privilege to the defendants of filing exceptions to the original decisions and judgment. The appeal is from this order.

*John H. Reynolds,* for the appellants.

*William R. Stafford,* for the respondent.

MORGAN, J. It is to be regretted that so much confusion should be produced by the careless manner in which the case is made up on the appeal. It is possible that some material fact or circumstance has been overlooked, owing to the indiscriminate mass of material thrown together without any apparent regard to the order in which the events transpired. The case contains at least three copies of the original decree of Chief Justice ROBERTSON, and two attachments against Thomas Butler, in *hæc verba,* with the affidavits on which they were procured. These attachments were procured in supplemental proceedings upon a judgment in the Supreme Court, in favor of one Peter Morris, and have no relevancy whatever to the questions presented by the appeal in this action. The fact that Thomas Butler was under an injunction in supplemental proceedings in another court might have been stated, without setting out the proceedings at length, if it was a fact proper to be brought to the attention of the

court in this suit. It will also be seen that there is some confusion in the proceedings, growing out of the fact that the decision of Chief Justice ROBERTSON was drawn up and settled as early as July, was entered and certified by the clerk on the 11th of August, but was not actually incorporated in the judgment-roll, in the clerk's office, until the 9th of November thereafter. In some of the subsequent proceedings the decree is treated as though it did not become effectual until it was copied into the judgment roll, and filed in the clerk's office. But in the order appealed from, Chief Justice ROBERTSON treats the judgment as having been made in July, when his decision and findings were drawn up and settled. I am aware that this confusion in the use of language is, in part at least, to be ascribed to the Code of Procedure, which attempts to abolish the distinction between proceedings at law and in equity; whereas, it is evident, from the very nature of the case, that judgments at law and in equity cannot be assimilated. The final decree of a court of equity takes effect when it is made and declared by the court, and the record, when made up, is only evidence of the decree, and simply proves it, without adding anything to its validity. It is not necessary even to enrol it, except in those cases where it is required to be enrolled as preliminary to some further action, which the statute authorizes to be taken upon it only after enrollment. In common law actions no judgment is pronounced, except by the record which is made up in the clerk's office.

From the language of Chief Justice ROBERTSON, I conclude that the decree was settled by him and filed in July, 1863, though by mistake it is recited as having been made in July, 1864. It then became the business of the clerk to enter it in the judgment-book; and, if it is to be regarded as a final decree, the clerk was required to make up the judgment-roll. His delay in entering it in the judgment-book did not affect its validity. (*Lynch* v. *Rome Gas-Light Co.*, 42 Barb., 591.)

But, in my opinion, the decree was not final. Although it did not, in terms, reserve any questions, yet, in effect, no

final judgment was pronounced. The decree left it open for either party to apply for final judgment. Instead of a final judgment for the plaintiff, the final judgment was to be for the defendant, unless the plaintiff complied with certain conditions. True, it disposes of the merits of the controversy, and in that respect was doubtless final, until modified or reversed; but it was necessary to bring the cause again before the court before it could be determined which party was entitled to the final judgment. And, according to the practice of the court in former times, when there has been a reservation of further directions, the court would not interfere upon the matter reserved in a summary way, but the cause must be set down for a hearing. (Daniel's Ch. Pl. and Pr., 1201, 1202.) The decree in question is, however, in effect, like a decree of foreclosure, with a direction that, upon paying the plaintiff what shall be reported due to him for principal, interest and costs, within six months after the master has made his report, at such time and place as the master shall appoint, the plaintiff shall reconvey the mortgaged premises to the defendant; but, in default of payment, the defendant shall be foreclosed of his equity of redemption. (Seton on Decrees, 130.) In such a case, a further order is necessary to complete the decree. (Daniel's Ch. Pl. and Pr., 1204.) The same practice is to be observed in cases of decrees for the redemption of a mortgage (id., 1205), which usually direct that, upon non-payment of the mortgage, &c., the bill shall be dismissed. In such cases a final order is necessary. (Id). The power of the court to enlarge the time for the plaintiff's performance of the conditions upon which he was entitled to final judgment cannot, I think, be questioned. (Id., 1206, and cases there cited.) The cause is still in court, and neither party is regularly entitled to a final judgment without a further application to the court for that purpose, although I think it is not absolutely necessary to put the cause again on the calendar, that being a matter of form rather than of substance. Certainly another application to the court, and another order, is necessary to give the parties the full and entire benefit of the

judgment of the court; and, when that is necessary, the decree cannot, I think, be regarded as final. (*Mills* v. *Hoag*, 8 Paige, 19, WALWORTH, Chancellor.)

If, upon a tender by the plaintiff of the stipulation, &c., the defendants had acquiesced in the decree, it may be questioned whether a further order for absolute judgment was necessary. I think it was, if the parties desired to make the judgment conclusive as a bar in any future litigation.

When the plaintiff showed to the court, by satisfactory evidence, to be brought before it, that he had complied with the conditions imposed upon him by the decretal order, he was entitled to an order for judgment absolute in his favor, and not before. If, upon a tender by the plaintiff of the stipulation &c., the defendants refused to satisfy the judgment, or to perform what was required of them, it then became necessary for the plaintiff to apply for final judgment against them, requiring them, without further conditions, to satisfy the judgment against the plaintiff, and to execute the necessary papers to carry out the provisions of the decree. From the final judgment thus pronounced, the defendant would be at liberty to appeal to the General Term of the Supreme Court, and obtain a stay of proceeding, until a final determination in the appellate court.

If this is a correct view of the case, it will be observed that the defendants' appeal is premature, even if the order appealed from involved the merits, which I think it does not. It can only be reviewed by an appeal from the final judgment, which may yet be rendered in favor of the defendants instead of the plaintiffs.

I have no doubt, however, that the order of Chief Justice ROBERTSON can be sustained upon the merits. It is not, by any means, clear that the plaintiff was in default, except in not bringing forward his evidence before Justice MONELL, when the defendants applied for judgment. But it is entirely clear that the court may vacate an order or judgment, either for irregularity or as a matter of favor, within one year after notice thereof, if it appears to the court that such order or judgment was taken against him through his mistake, inad-

vertence, surprise, or excusable neglect. (Code, § 174.)   The order of Justice MONELL was, doubtless, taken against the plaintiff under circumstances which fully justified the court in setting it aside, under the authority of section 174 of the Code of Procedure.

It is, however, claimed by the appellants' counsel that Chief Justice ROBERTSON had no right to vacate the order of Justice MONELL.   But it is apparent that the order granted by Justice MONELL did not involve the merits.   It was made upon the basis of the decree, with a view to give it effect.   If his order had varied the decree in any important respect, it would be subject to the same objection made by the appellants' counsel against the subsequent order of Chief Justice ROBERTSON.   In such case, the defendants' application for judgment should have been made before the judge who pronounced the original decree.   And in my view of the case, this was the proper course, as I think the decree could not be regarded as final until it was ascertained by the court whether the conditions upon which final judgment was to be given had been complied with or not.   But, waiving this question, and treating the decree of Chief Justice ROBERTSON as final, the subsequent application for judgment was not a special proceeding, but simply a motion, like any other motion after judgment to set aside the judgment and allow the defeated party to interpose his claim or defense — a motion always addressed to the discretion of the court, and not the subject of review in this court.   If it leads to a rehearing of the cause upon the merits, then, without doubt, it would be reheard before the same judge who heard it before.   It is not necessary now to decide whether the court can grant a rehearing in an equity action, except on appeal to the General Term; but the authority to set aside the judgment or decree in a proper case, as a matter of favor, is expressly given by the Code.   Regarding the proceedings before Chief Justice ROBERTSON as a motion after judgment, it must be governed by the same rule as ordinary motions.   It involves only a question of practice.   It is claimed by the appellants' counsel, that the order in question involved a

*substantial* right.   It is said that the order prevents Lee from reaching, by his, supplemental proceedings, the Francis Morris judgment against Niles.   But these supplemental proceedings were taken *pendente lite*, and, of course, are subject to any decree which may be made in this action.   I am of opinion, however, that the decree of July or August, 1863, although incorporated into the judgment-roll, so called, is not to be regarded as a final determination of the action, and for that reason the subsequent order of the same judge is not appealable.   Indeed, this last order is not final, although it may lead to a final judgment in favor of the plaintiff, instead of the defendants.   The question as to the correctness of the original decree is not now before us.

The order appealed from should be affirmed, with costs to the defendants.

All the judges concurring,

Appeal dismissed.