SOLOMON D. WEAVER, Respondent, *v.* JAMES P. BARDEN, Appellant.

The capital stock of an incorporated company is personal property; it has not, nor has the certificate or other evidence of title or ownership, any of the qualities of commercial or negotiable paper.

As a rule, the purchaser or assignee of shares of the capital stock in a corporation acquires no other or better title than the seller or assignor has, and takes it subject to the legal and equitable rights of third persons.

The owner cannot be divested of his property except by his own voluntary act and consent, or by some act which would be effectual to give title, as against him, to other movable property and choses in action.

If the rightful owner has invested another with the usual evidence of title, or an apparent authority to dispose of it, he will not be allowed to make claim against an innocent purchaser for a valuable consideration, dealing upon the faith of such apparent ownership or right of disposition.

To entitle a purchaser to the protection of a court of equity as against the legal title or a prior equity, he must not only be a purchaser without notice, but he must be a purchaser for a valuable consideration actually paid; he must have paid the purchase-money, or some part thereof, or have parted with something of value upon the faith of such purchase, before he had notice of the prior right or equity. Mere security given for the purchase-money, or a credit upon a pre-existent debt, is not sufficient.

Where stock is transferred partly in payment of a precedent debt and partly for a consideration paid at the time, the purchaser will not be regarded as a holder for value as against one having the legal title or a prior equity, so far as the assignment was received in payment of the precedent debt (GROVER, J., dissenting), but is entitled to a lien for the amount of the consideration paid, and to a repayment of that amount, before he will be required to reconvey the stock.

(The authorities upon the question as to who is a *bona fide* holder for value collated and discussed.)

Under a general denial in an answer, defendant has the right to give evidence controverting any facts necessary to be established by plaintiff, but not to prove a defence founded upon new matter.

The complaint alleged in substance that plaintiff purchased certain shares of stock, but that the stock was, without plaintiff's knowledge or assent, transferred to a third person, who subsequently transferred the same to defendant, and that the latter refused to transfer, etc. *Held*, that under a general denial defendant could not prove that he was a *bona fide* purchaser for value. (GROVER, J.)

(Argued February 28, 1872; decided April 30, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order reversing a judgment in favor of defendant (which was entered upon decision of the court at Special Term), and directing a judgment in favor of plaintiff.

Action to compel a transfer of thirteen shares of the stock of the Knickerbocker Stage Company of New York. The facts sufficiently appear in the opinion.

*S. C. Keeler* for the appellant. As the reversal was not upon questions of fact, the court will not look behind the findings. (*Morse* v. *Liverpool Ins. Co.*, 35 N. Y., 664; *Baldwin* v. *Van Duzer*, 38 id., 487.) The title to stock was not vested in Finch. (*Thatcher* v. *Candee*, 33 How., 145.) Every presumption is in support of judgment. (*Grant* v. *Morse*, 22 N. Y., 323; *Carman* v. *Pultz*, 21 id., 547.) Under general issue defendant could show title out of plaintiff. (*Robinson* v. *Frost*, 14 Barb., 536; *Schuyler* v. *Hud. R. R. R. Co.*, id., 653; *Miller* v. *Decker*, 40 id., 228.) Defendant was a *bona fide* purchaser. (*Saltus* v. *Everett*, 20 W. R., 267; *Hoffman* v. *Cbryup*, 22 id., 285; *Talman* v. *Labosh*, 1 Duer, 354; *Crocker* v. *Crocker*, 31 N. Y., 507; *McNeil* v. *Tenth National Bank of N. Y.*, Alb. Law Journal, vol. 5, p. 43; 46 N. Y., 325.)

*D. B. Prosser* for the respondent.

ALLEN J. The plaintiff furnished the consideration for the transfer of the shares of stock from Finch, the original owner, the same having been made in satisfaction of a debt due him from the assignor. The stock was transferred into the name of a son of the plaintiff, who was also a son-in-law of the defendant, without the knowledge or consent of the plaintiff, who had no knowledge that the transfer had been made in that form until some time in 1864, long after the transfer by the son to the defendant. The son, at the time of the transfer by Finch, was, in the language of the report of the referee, "to some extent the agent of the plaintiff in New York."

The stock was transferred by the son of the plaintiff to the defendant in January, 1860, "in part payment of an indebtedness from said Llewellyn (the son) to defendant of over $2,500;" and "the defendant at the same time sold and delivered to said Llewellyn 280 pounds of butter, at twenty cents per pound, amounting to seventy dollars, which was a part of said indebtedness, paid in part as aforesaid." "Such purchases of said stock were made by defendant's son, acting as his agent; and the sum of $520, the amount agreed upon as the value of said stock, was, by the defendant, credited upon the indebtedness of said Llewellyn by the defendant."

The evidence is that the butter was sold to the assignor of the stock on the third of January, 1860, and the stock was transferred the day following.

The account between the defendant and Llewellyn Weaver was made an exhibit by the defendant, and discloses a long account, commencing in 1852; the last item on the debtor side of which is the charge of seventy dollars for the butter; and the first item on the credit side is the sum of $520 for the shares of stock.

The transaction was simply a transfer of the shares of stock by Llewellyn Weaver, and a subsequent entry by the defendant, in his books, of the credit for the purchase-price. No security was surrendered, and no voucher given.

The defendant parted with nothing as a consideration for the transfer.

The capital stock of an incorporated company is personal property; and it has not, neither has the certificate or other evidence of title or ownership, any of the qualities of commercial or negotiable paper.

As a rule, the purchaser or assignee of shares of the capital stock in a corporation acquires no other or better title than the seller or assignor has, and takes it subject to the legal and equitable rights of third persons. The rightful owner may be estopped by his own acts from asserting his title, as he may be in respect to other property of a like character. If he has invested another with the usual evidence of title,

or an apparent authority to dispose of it, he will not be allowed to make claim against an innocent purchaser dealing upon the faith of such apparent ownership and *jus disponendi*. (*Dustin* v. *Livingston*, 9 J. R., 96; *Howe* v. *Starkweather*, 17 Mass., 244; *McNeil* v. *Tenth Nat. Bank*, lately decided in this court and not reported [46 N. Y., 325—Rep.]; *Arnold* v. *Ruggles*, 1 R. I., 165.) The plaintiff, the owner in fact of the stock in controversy, did not give to another the external evidence of authority to dispose of it, and did not assent to placing the property, or the evidence of property, with his son.

Whatever was done in the way of divesting the plaintiff of his property, was done in fraud of his rights and without his consent.

An unauthorized sale, although for a valuable consideration and without notice, vests no higher title in the vendee than was possessed by the vendor. (*Prescott* v. *Deforest*, 16 J. R., 159; *Wheelwright* v. *Depeyster*, 1 id., 471; *Williams* v. *Merle*, 11 W. R., 80; *Brower* v. *Peabody*, 3 Ker., 121; *Covill* v. *Hill*, 4 Den., 323). The property in the capital stock of a corporation is not distinguishable from other personal property; and the owner cannot be divested of his property except by his own voluntary act and consent, or by some act which would be effectual to give title as against him to other movable property and choses in action.

The plaintiff is not estopped, as against the defendant, upon the evidence or the findings of the referee, from asserting his title to the stock and the dividends upon it. The original title of the plaintiff is conceded, and the defendant seeks to make title under one who had no legal title or authority to transfer, but the evidence of title acquired by fraud and without the authority or assent express or implied of the plaintiff. Such a title cannot avail against the rightful owner. (*Pollock* v. *National Bank*, 3 Seld., 274.) The only doubt or difficulty as to the right of the plaintiff to recover, conceding all that is claimed in behalf of the defendant, to wit, that he is a *bona fide* purchaser for value,

without notice of the title and claim of the plaintiff, grows out of the fact that the legal evidences of title never were in the plaintiff, the title having been transferred without fault of the corporation directly from Finch to Llewellyn Weaver, and from the latter to the defendant. It is not the case of a transfer under a forged power of attorney or by a person of the same name as the rightful holder of the stock. A party could not be divested of the title to his property by such means, and would have a remedy over against the corporation permitting the transfer, or might follow his stock and reclaim it from the transferee. (See *Davis* v. *Bank of England*, 2 Bing., 393; *Sewall* v. *Boston Water Power Company*, 4 Allen, 277; *Duncan* v. *Luntley*, 2 McN. & G., 30.

The plaintiff here has no remedy against the corporation for permitting the transfer and issuing the new certificates to the son of the plaintiff. The corporation was not careless or negligent in the transaction, and no wrongful act was committed by its officers.

At the time of the transfer to the defendant his assignor was insolvent and continued so until his death. The only remedy, therefore, of the plaintiff is to follow his stock into the hands of the defendant, and reclaim it, with the dividends, upon the strength of his superior title, and he is entitled to recover unless the defendant is a purchaser for a valuable consideration and in good faith. In *Crocker* v. *Crocker*, 31 N. Y., 507, the claimant and rightful owner of the stock had conferred the apparent right of property in bank stock upon a third party who had abused his confidence, and yet was allowed to recover except as against a purchaser in good faith and for a valuable consideration for an advance made on the faith and security of the stock.

The referee, upon the facts found, held that the defendant was the owner of the shares in good faith and for a valuable consideration paid by him therefor, and the complaint was dismissed on that ground.

The plaintiff was defeated on the ground that the defendant had acquired a title superior in equity to that of the plaintiff,

by a purchase in good faith without notice of the claim or of any defect in the title and for a valuable consideration paid. The referee was clearly right in his views that a purchase, without notice of the plaintiff's claim alone, would not protect the defendant, and that something more than a good consideration, a consideration which would be sufficient as between the parties to the transaction, was necessary to shield him against the claim of the plaintiff.

He recognized the rule that the consideration must be valuable and actually paid, and that the defendant must have parted with value upon the faith of the purchase, and his error was in regarding the credit of the purchase price in his books to the account of the assignor as a "valuable consideration paid."

In speaking of a consideration which is to protect against prior and latent equities, the terms "price paid" and "valuable consideration" are used as convertible terms. (*Willoughby* v. *Willoughby*, 1 T. R., 763, 767.) To entitle a purchaser to the protection of a court of equity, as against the legal title or a prior equity, he must not only be a purchaser without notice, but he must be a purchaser for a valuable consideration, that is, for value paid.

Where a man purchases an estate, pays part and gives bond for residue, notice of an equitable incumbrance before payment of the money, though after giving the bond, is sufficient. (*Tourville* v. *Naish*, 3 P. Wms., 306; *Story* v. *Lord Windsor*, 2 Atk., 630.) Mere security to pay the purchase price is not a purchase for a valuable consideration. (*Hardingham* v. *Nicholls*, 3 Atk., 304; *Maundrell* v. *Maundrell*, 10 Ves., 246–271; *Jackson* v. *Cadwell*, 1 Cow., 622; *Jewett* v. *Palmer*, 7 J. C. R., 65.) The decisions are placed upon the ground, according to Lord HARDWICKE, that if the money is not actually paid the purchaser is not hurt. He can be released from his bond in equity. Chancellor WALWORTH lays down the rule as follows: "To entitle a party to the character of a *bona fide* purchaser, without notice of a prior right or equity, such party must not only

have obtained the legal title to the property, but he must have
paid the purchase-money, or some part thereof, at least, or
have parted with something of value upon the faith of such
purchase before he had notice of such prior right or equity."
(*De Mott* v. *Stanley*, 3 Barb. Ch. R., 403); and see *Caldwell* v.
*Bartlett*, 3 Duer, 341; *Keyes* v. *Hasbrouck*, id., 373.)   In
*Root* v. *French* (13 W. R., 570), it was held that while a
transfer of goods by a fraudulent buyer to a purchaser in
good faith, and who gave value 'for them, that is, paid for
them at the time of the transfer, made advances upon them,
incurred responsibilities upon the credit of them, or received
them in pledge for money or property loaned upon the
strength of them, might hold the goods against the seller, the
original owner who had been defrauded of them, that a trans-
fer of the goods to a *bona fide* creditor of the fraudulent pur-
chaser in payment of a pre-existing debt did not constitute
the creditor a *bona fide* purchaser for a valuable consideration.
*Butler* v. *Harrison* (Cowp., 565) was cited with approval, in
which it was held that the mere passing money to the credit
of another, where there is no new credit given, nor acceptance
of new bills or sum advanced in consequence, it was not a
payment.   The situation of the party was not changed, and
he had parted with nothing.   That is all that was done by the
defendant here.   The same principle is affirmed in *Padgett*
v. *Lawrence* (10 Paige, 170), the chancellor holding that the
purchaser of the legal title to property who receives a convey-
ance thereof merely upon the consideration of a prior indebted-
ness of the grantor is not entitled to protection as a *bona fide*
purchaser, without notice of a prior equity of a third person
therein.   But the relinquishment of a valid security which
the purchaser before held for his debt, and which cannot
be recovered, so as to place him in the same situation substan-
tially as to security as he was in prior to his purchase, may
entitle him to such protection.   This case is cited with
approval in *Peck* v. *Mallams* (6 Seld., 545).   This court, in
*Wood* v. *Robinson* (22 N. Y., 564), held that a mortgagee
who had taken a mortgage to secure a precedent debt was

not entitled to protection against a prior latent equity. Nothing was advanced at the time, and no security was given up, neither was there any definite contract for extending the credit on the demands held by the creditor. Judge DENIO lays down the proposition broadly, and all the judges concurred: " When a conveyance is made, or a security taken, the consideration of which was an antecedent debt, the grantee or party taking the security is not looked upon as a *bona fide* purchaser;" and again, " it is well settled that a grantee or incumbrancer who does not advance anything at the time, takes the interest assigned subject to any prior equity attaching to the subject." The doctrine that a valuable consideration is necessary to create a defence against prior equities, is the doctrine of courts of equity in other States and in England, as applied to the transfer of real or personal property, and choses in action other than negotiable instruments. The only difficulty has been in determining what is a " valuable consideration."

It is generally admitted that the mere existence of a precedent debt is not a sufficient consideration to support a conveyance as against prior equities; but in some States it is held that when made in absolute payment and satisfaction of an antecedent debt, the purchase will be regarded as a purchase for value. But that is not the rule in this State. (*Dickson* v. *Tillinghast*, 4 Paige, 215.)

In this State the rule has been applied to the transfer of bills of exchange and promissory notes, and the party taking them in payment of or as security for an antecedent debt when no new credit is given, security surrendered or obligation incurred, has not been regarded as a *bona fide* holder for value as against third persons having prior equities, but the decisions have not been in entire harmony with those of the Supreme Court of the United States and some of our sister States. The rule as applied to negotiable instruments in this State has been criticised and quarreled with by individual judges, but whenever it has come directly in judgment, the doctrine, as first announced in *Coddington* v. *Bay* (20 J. R. 637), has been adhered to. The claim to distinguish between

commercial instruments and other choses in action and property interests has been based upon the supposed interests of commerce and the necessity of giving the freest circulation to instruments so generally used in commercial transactions. Bills of exchange and promissory notes do constitute in a great measure the medium of exchange between merchants and take the place of money, and they pass from hand to hand transferable by indorsement or mere delivery, and many have thought that it would have been better if, in all cases of transfer of that class of instruments in good faith and in the ordinary course of business and upon a sufficient consideration as between the parties, the same had been held valid, and to have vested a good title in the transferree, *Bay* v. *Coddington* (5 J. C. R., 54), affirmed in the Court for the Correction of Errors (20 J. R., 637), was to the effect that to give title as against the rightful owner of commercial paper fraudulently transferred, it must be received by the transferree not only in the ordinary course of business and without notice, but also for a present value, for a fair and valuable consideration given or allowed at the time, that credit must be given to and value parted with on the strength of the identical paper, and that a past consideration or antecedent debt or liability was not sufficient. A mere receipt of a bill or note in payment of or as security for a precedent debt has never, in this State, been held sufficient to protect the title of the holder as against the equities of third persons, and some new credit must be given, new advance made, or some prior security parted with, or a debt absolutely satisfied and extinguished, in order to complete the title of the holder. (See cases cited in *Farington* v. *Frankfort Bank*, 24 Barb., 554.)

In this court the rule has not been departed from; on the contrary, it has been recognized and followed in *Young* v. *Leo* (2 Ker., 551); *Boyd* v. *Cummings* (17 N. Y., 101); *Essex County Bank* v. *Russell* (29 N. Y., 673); *Brown* v. *Leavitt* (31 id., 113). BROWN, J., in *Bank of New York* v. *Vandervorst* (32 N. Y., 553), says: "The rule is, that if the

holder parts with anything of value, money, property or existing securities, at the time he receives the note, and upon the faith of its being paid, he is *ipso facto* clothed with the attribute of a holder for value." In that case the plaintiff had taken the note in controversy as a collateral security for a loan made at the time upon another note and the bank was held to be a holder for value. In *Lawrence* v. *Clark* (36 N. Y., 128), it was decided that a party receiving a note on a precedent debt, without surrendering or relinquishing any security or right respecting it, is not a *bona fide* holder of the same. The note, before it fell due, had been transferred "by the payees to the plaintiff," who received and accepted it upon and in part payment of a prior existing indebtedness " of the payees to them." *Coddington* v. *Bay ; Farrington* v. *Frankfort Bank, supra ; Rosa* v. *Brotherson* (10 W. R., 85), and *Payn* v. *Cutler* (13 id., 605) were cited with approval, and the doctrine that a creditor receiving the transfer of a negotiable note in payment of a precedent debt without giving up any security, takes it subject to all equities existing between the original parties, reasserted. (See, also, *Chrysler* v. *Renois*, 43 N. Y., 209.) Here the defendant parted with or surrendered no security, and his situation was, in no respect, changed by the transaction, and if the title which he acquired is to be determined by the very liberal rules which, in view of the convenience if not the necessities of commerce, have been established in respect to negotiable instruments, the defendant is not to be regarded as a holder for value so far as the assignment was received in part payment of the precedent debt. If the butter was sold upon the faith of the transfer of the stock, the defendant would be entitled to be repaid that amount before reconveying the stock.

He would be entitled to a lien for the price of the butter.

The Supreme court properly reversed the judgment of the referee, but it was not a case for judgment absolute for the plaintiff. A new trial should have been awarded.

So much of the judgment of the Supreme Court as gives

judgment for the plaintiff is reversed and a new trial is granted, costs to abide event.

GROVER, J. The counsel for the respondent insists that the judgment is not a final determination of the controversy, and therefore not appealable to this court. The judgment determines that the plaintiff is entitled to the thirteeh shares of stock, the subject of the litigation, and adjudges and directs the defendant, within five days after notice of its entry, to assign and deliver the same to the plaintiff, together with all evidence and papers relating to the title. It also determines that the plaintiff is entitled to recover costs of the defendant, and adjusts the amount thereof at $403.55, and awards execution therefor against the defendant; in these respects the judgment is final and the plaintiff can at once proceed to obtain satisfaction. But the judgment further determines that the defendant shall account for and pay over to the plaintiff all interest and dividends received by him upon such stocks, and appoints a referee to take and state an account thereof, and determines the manner in which such account shall be taken, and provides that upon the confirmation of this report the plaintiff shall have judgment for the amount so found to have been received by the defendant. In respect to this, the judgment is not final. The Code, section 11, provides that an appeal may be taken to this court from any actual determination made at a General Term of the Supreme Court and in a judgment in an action commenced therein or brought there from another court. In this case the judgment actually determines the title to the stock, and provides that the defendant shall within five days after notice of its entry, transfer the same to the plaintiff. It also awards execution against the defendant forthwith for the costs. In respect to the recovery of the interest and dividends received by the defendant, there appears to have been a severance and a separate and distinct judgment directed by the court therefor. This somewhat novel proceeding resulted from the award of final judgment by the General Term instead of ordering a new

trial upon the reversal of the judgment of the Special Term. *Butler* v. *Lee et al.* (3 Keyes, 70) and *Adams* v. *Fox* (27 N. Y., 640), are cited by counsel. In the former the judgment gave the plaintiff relief conditioned upon the performance by him of certain acts in a specified time, and, in case of his default, dismissed the complaint with costs to the defendant. It was no final judgment in favor of either party, and left it doubtful for which party such judgment would be given. The latter was an order for judgment for the defendant upon demurrer to the complaint, with leave to the plaintiff to amend upon terms. The appeal of the plaintiff therefrom, was dismissed for the reason that it was not final, but dependent upon the election of the plaintiff to amend or not upon the terms imposed. I think the judgment in the present case must be regarded as final, and that the question as to the interest and dividends must be regarded as severed, and a separate judgment in respect thereto provided for. The counsel for the respondent insists that the defence was not admissible under the answer. The complaint, in substance, alleged facts showing, as claimed by the plaintiff, that he was the owner of thirteen shares of stock in an incorporated stage company in New York, which had been transferred to one L. J. Weaver, for the plaintiff, which the latter had transferred to the defendant, as the defendant claimed, in payment of a debt due from the defendant to him, and prayed that the defendant might be adjudged to assign and deliver such stock to the plaintiff and pay him the dividends received thereon. The answer was a general denial. To establish a cause of action, the plaintiff was bound to prove that he was the legal owner of the stock or equitably entitled to the same as against the defendant under this answer; the defendant had the right to give evidence controverting any fact necessary to be established by the plaintiff to authorize a recovery, but not to procure a defence founded upon new matter. Upon the trial, it was proved by the plaintiff that one Finch had formerly owned the stock. That he assigned the same with other property to L. J. Weaver and one Hutchins, in trust for his creditors,

of whom the plaintiff was one. That Finch compromised with his creditors thereafter, and made an agreement with the plaintiff to take the stock in question, in satisfaction of the balance of his debt. That under this agreement the stock in question was transferred to L. J. Weaver, the son of the plaintiff, and in some matters his agent in New York, with intent to satisfy the plaintiff's debt. That the plaintiff was ignorant of the stocks being transferred to L. J. Weaver, or of the same being placed in his name upon the books of the company. That L. J. Weaver subsequently transferred the same to the defendant, who refused to transfer the same to the plaintiff, upon being requested so to do, or to account for and pay the dividends to the plaintiff. The facts proved showed that the legal title to the stocks was in L. J. Weaver. Finch, the former owner, had procured the same to be assigned to him by his trustee, without indicating any interest in any other person therein. It was registered in his name upon the books of the company; but the facts proved showed that, as between him and the plaintiff, the equitable title was in the latter, for whom L. J. Weaver held the stock as trustee. That L. J. Weaver transferred the stock to the defendant, who claimed the title by virtue thereof. This established the plaintiff's right to the stock as against the defendant, unless he was a *bona fide* purchaser from L. J. Weaver. (*Crocker* v. *Crocker*, 31 N. Y., 507.) To meet this case, the defendant offered to prove in substance that he was a *bona fide* purchaser of the stocks from L. J. Weaver. The Special Term held, overruling the plaintiff's objection, that this was admissible under the answer. This was error. Under the general denial the defendant could not introduce evidence tending to show a defence founded upon new matter, but such only as tended to disprove any fact that the plaintiff must prove to sustain his case. The plaintiff was not bound to prove, for this purpose, that the defendant was not a *bona fide* purchaser for value of L. J. Weaver. It was enough for him to show his equitable title to the stock in the first instance, and then it was incumbent upon the defendant to show that this equitable

title was barred as against him. Showing that he was a *bona fide* purchaser from L. J. Weaver would bar this equity; but this was a defence founded upon new matter, and should have been set up in the answer, and then the plaintiff would, perhaps, have been prepared to meet it. Had the evidence been excluded by the Special Term, the defendant could, if so advised, have taken steps to procure an amendment of his answer, so as to make the defence admissible. Had the General Term reversed the judgment upon the ground that this defence was improperly admitted, a new trial should have been ordered to enable the defendant to procure such amendment, which the Special Term has power to grant, upon terms deemed reasonable. Had the General Term ordered a new trial and the defendant had appealed therefrom, the order must have been affirmed by this court, and judgment absolute for the plaintiff ordered. But the General Term did not order a new trial, but gave judgment absolute for the plaintiff. Such a disposition of the case can only be sustained when it is apparent that no evidence which the defendant can give, under any answer which the Special Term has the discretionary power to authorize, will establish a defence, when, as in the present case, the defendant has had no occasion to apply for the exercise of this discretion. (*Griffin* v. *Marquardt*, 17 N. Y., 28.) The facts found show that L. J. Weaver had the legal title to the stock; that he transferred this title to the defendant. The counsel for the respondent claims that the equitable title of the plaintiff was available against this title of the defendant, although acquired upon a *bona fide* purchase, for the reason that L. J. Weaver took the title without the knowledge and consent of the plaintiff. But the plaintiff never had the legal title to this stock. That was transferred to L. J. Weaver by the former owner, and his transfer of the same to a *bona fide* purchaser gave the latter this title and a right in equity equal to that of the plaintiff, and thus the case comes within the familiar principle that where the equity of the parties is equal, the legal title will prevail. This was the principle upon which *Crocker* v. *Crocker*

(*supra*) was decided.   The length of time that the legal title had been held by the trustee, or whether taken in his name with the assent of the equitable owner, cannot affect the equities between such owner and a *bona fide* purchaser from the trustee.   Where the trustee has the legal title and transfers it to a *bona fide* purchaser, the title of the latter, as to real estate, has always been held to prevail as against any equity to which the estate was subject in the hands of the trustee.   The same is true as to stocks or any other personal property.   This does not result from any idea of the negotiability of the property, whether real or personal, but from the principle above referred to that, where the equities are equal, courts of equity will not interfere to divest the legal title.   (See *McNeil* v. *Tenth National Bank*, 46 N. Y., 325.)   The proof showed that the defendant was a *bona fide* purchaser.   He paid for the stock in part by butter sold at the time, and the residue of the price was applied in payment of an existing account.   (*Brown* v. *Leavitt*, 31 N. Y., 113; *Seymour* v. *Wilson*, 19 N. Y., 417.)   I have examined the exceptions taken to other rulings upon the trial as to the competency of evidence, and think none of them well taken. The judgment of the General and Special Terms must be reversed and a new trial ordered, costs to abide event.

All concur in result, except CHURCH, Ch. J., not voting.

GROVER, J., dissents from opinion of ALLEN, J., that defendant is not a *bona fide* purchaser.

Judgment reversed.