ANGUS McLEOD v. FIRST NATIONAL BANK et al.

1. VENDOR AND VENDEE: PURCHASER FOR A VALUABLE CONSIDERATION. — To constitute a *bonâ-fide* purchaser for a valuable consideration, the purchaser must have advanced some new consideration, either in money or property, or must have relinquished a pre-existing security for his debt, or have done some act on the faith of the purchase itself, which cannot be

retracted. *Robbins* v. *Callender*, Freeman's Ch. Rep. 295; *Rowan* v. *Adams*, S. & M. Ch. Rep. 49; *Emanuel* v. *White*, 34 Miss. 56; *Pope* v. *Pope*, 40 ib. 516.

2. SAME: PURCHASER WITHOUT NOTICE: WHAT EQUIVALENT TO NOTICE. — Whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry, becomes a duty, as in the case of purchasers and creditors, and would lead to knowledge of the requisite fact by the exercise of ordinary diligence and understanding.

3. TRUSTS AND TRUSTEES: ILLEGAL CONVERSION AND INVESTMENT OF TRUST PROPERTY. — In cases of trusts, where the trustee has violated his trust by an illegal conversion of the trust property, the *cestui-que* trust has the right to follow the property into whosoever hands he may find it, not being a *bond-fide* purchaser for a valuable consideration without notice; or where the trustee has, in violation of the trust, invested the trust property in any other property, the *cestui-que* trust has his option either to hold the substituted property liable to the original trust, or to hold the trustee personally responsible for the breach of the trust. 1 Story's Eq., §§ 533, 534; 4 Kent's Com. 307; *Oliver* v. *Pratt*, 3 How. W. S. 401.

APPEAL from the Chancery Court of Hinds county. Hon. John Watts, chancellor.

This cause is presented to this court on the original bill of appellant, and amended and supplemental bill, and the demurrer of appellees, and the order of the court below, sustaining the demurrer and dismissing the bills.

The original bill states: That appellant was county treasurer of La Fayette county. That, about the 1st of May, 1867, he received from the auditor notice that there was due the county of La Fayette the sum of $13,259.69, on account of interest on the Chickasaw School-Fund, and that he was authorized to receive the same upon compliance with the requirements of the law. That he complied with the law by giving bond with security, and obtained from the Probate Clerk a certificate to that effect. It being inconvenient for him to go to Jackson, he endorsed upon the certificate of the Probate Clerk the following: "Pay the within amount — $13,259.69 — to the bearer, J. M. Lyles. A. McLeod, County Treasurer," and handed the same to J. M. Lyles, a gentleman of high character for integrity, and honesty, and solvency, a banker at Oxford, and requested him to receive the money, and bring the same to appellant at Oxford.

That Lyles received from the auditor twelve warrants for
$1,000 each, and one for $1,259.69, drawn in favor of said Lyles,
and upon the State Treasurer, and executed a receipt for the
same.   That, upon Lyles' return to Oxford, he informed appel-
lant that he had received the warrants from the auditor ; and,
there being no money in the State Treasury, he had deposited
them with the "First National Bank," at Jackson, for collection.
That they would be collected as soon as there were funds in the
Treasury, and the amount forwarded to him.   That J. M.
Lyles died suddenly, in July, 1867, and that William L. Lyles
has been appointed his administrator.   That, on the 24th of
July, 1867, he learned from William L. Lyles, administrator,
that the warrants received by J. M. Lyles had been made pay-
able to his (Lyles') order, and that they had been deposited with
the "First National Bank," as collateral security for a personal
liability of J. M. Lyles.   That he went immediately to Jack-
son, and was informed that the warrants were deposited by
Lyles, either as collateral security, or in payment of a debt of
said Lyles.

That the warrants show upon their face that they were trust
funds.   That no money was advanced by the bank.   That ap-
pellant was ignorant of the misapplication of the warrants,
until after the death of J. M. Lyles.

The bill prays for an injunction against the "First National
Bank," to enjoin it from collecting or disposing of the war-
rants; and against J. H. Echols, State Treasurer, to enjoin him
from paying the same; and asks that the "First National
Bank" be required to deliver said warrants to appellant.

An injunction was granted and duly served.   The bill was
marked filed by the clerk on the 1st August, 1868, and the
writ of injunction and subpœna executed same day.

On the 11th of September, 1867, Joshua and Thomas Green
answered : That, at the time the writ of injunction was served
on them, they did not, as president and cashier of the "First
National Bank," nor for themselves individually, nor for any
one else, have possession of the warrants mentioned in the
bill.

On the 8th of October, 1867, appellant filed his amended and supplemental bill, which states: That the original bill, though marked filed on the 1st August, 1867, was deposited in the clerk's office on the evening of the 31st July, and that the clerk gave Joshua Green notice of the filing of the bill before he issued the injunction.

That, on the 25th July, 1867, appellant went to the "First National Bank," and met Joshua Green, the president, and informed him that he was county treasurer of La Fayette county; that the warrants in his possession received from J. M. Lyles were the property of the county; and that Lyles had no authority to transfer them. That said Green read to him a written memorandum to the effect that the warrants were held as collateral security for the payment of certain notes held by the bank, one of which was made by John H. Echols, the Treasurer of the State, and stated, that when said notes were paid he would return the warrants to Lyles. That, on the same day, appellant went to the State Treasurer, John H. Echols, and requested him not to pay the warrants, who told him he could not refuse unless enjoined; and appellant informed him that he intended enjoining the payment of the same.

That said Green, after the information given him by appellant, and after the bill for injunction was deposited in the clerk's office, transferred said warrants, receiving money and smaller warrants in lieu of the same. That said John H. Echols, Treasurer, after the notice given him, had received some of said warrants from the sheriffs of different counties in payment of taxes.

The bill prays, that the "First National Bank" account, as trustees, for the warrants, or the money received by them; and for an injunction restraining the bank from disposing of the money, warrants, or effects received by them in lieu of the original.

The "First National Bank," Joshua and Thomas Green, John H. Echols, State Treasurer, and the administrator of J. M. Lyles, were made defendants. A demurrer was filed by appellees, which, on the 23d day of November, 1867, was sustained,

and the original and amended bill dismissed, and an appeal taken to this court.

*W. & J. R. Yerger*, for appellant, argued: —

A court of equity has jurisdiction to direct the delivery up, cancellation, &c., of agreements, securities, deeds, &c.; which is founded on the principle of *quia timet*. Sto. Eq. § 694, *et seq.*

The remedial justice of a court of equity is often applied by affording specific relief in case of unexceptional deeds or other instruments in favor of those legally entitled to them. Ib. § 703, *et seq.* A decree for the specific delivery of the certificate of registry of a ship against him unlawfully detaining it, is valid. *Gibson* v. *Ingo*, 6 Hare, 112. And so with other in- struments. In this respect, a court of common law is in a great measure deficient, wherein a judgment *in rem* is rarely pro- nounced, damages being mainly given; which constitutes the true ground for the interposition of equity. Sto. Eq. § 703, *et seq.*, and cases cited; *Miller* v. *Helm*, 2 S. & M. 687.

All the facts stated in the bill, and amended bill, are to be taken as true; then it is manifest that complainant had an equitable interest in the warrants, and the right to the posses- sion of them. Lyle was only a trustee, holding them for com- plainant; and the facts in the bill, admitted by the demurrer, show conclusively that he was guilty of a breach of trust in transferring the warrants to the bank. The defendants can only maintain their right to them against complainant, by show- ing that they are *bonâ-fide* holders in due course of trade, with- out notice, and that the warrants were negotiable; but the allegations of the bill negative such a defence.

" Auditor's " warrants are only negotiable by *endorsement*. Rev. Code, chap. 6, § 3, art. 35. The warrants were " deposited" by Lyle, and not endorsed. If endorsed to defendants, and they rely on that defence, it should be set forth affirmatively by plea or answer. Hill on Trustees, 3d Am. edit., 771, *et seq.* A person who takes a conveyance of property to secure the pay- ment of a pre-existing debt, does not occupy the position of a

*bonâ-fide* purchaser.    *Peck* v. *Hansey*, 4 S. & M.; *Farmer's Bank of Va.* v. *Douglass*, 11 S. & M.; *Pope* v. *Pope*, 40 Miss. Rep. 516.

In *Coddington* v. *Bay*, 20 Johns. 637, it was held that where negotiable paper is transferred for valuable consideration, without notice of fraud, the rights of the holder should prevail against the true owner; but the valuable consideration must not only be such as is given between the parties themselves; the holder must have incurred loss by giving credit to the paper, or incurred responsibilities thereon. See, also, 5 Johns. Ch Rep. 54.    *Vide* the following cases, in which the rule in *Coddington* v. *Bay* is fully sustained: *Rosa* v. *Brotherson*, 10. Wend. 86; *New York Bank* v. *Worthington*, 12 ib. 593; *Payne* v. *Cutler*, 13 ib. 605; *Clark* v. *Ely*, 2 Sandford Ch. Rep. 168; *Walker* v. *McDonald*, 6 Hill, 93; *White* v. *Springfield Bank*, 6 Barlow, 225; *Stewart* v. *Small*, 2 ib. 559; *Mickles & Bradley* v. *Colvin & Earll*, 4 ib. 304; *Spear* v. *Ripley*, 6 ib. 445; *Petrie* v. *Clark*, 11 Sergt. & Rawle, 238; *Wormley* v. *Lowrey et al.*, 1 Hump. 468; *Van Wick* v. *Norvell*, 2 ib. 192; *Ingham* v. *Vaden*, 3 ib. 51; *Same* v. *Same*, 4 ib. 66; *Jenness* v. *Bean*, 10 N.H. 200; *Williams* v. *Little*, 11 ib. 66; Byles on Bills, 99: *De la Chaumette* v. *The Bank of England*, 208; 9 B. & C., 17 Eng. Com L. Rep.

The distinction in some States sought to be made between the rights of a holder who takes the paper as collateral security, and when taken in payment,— that the latter can claim as a *bonâ-fide* purchaser, &c., cannot avail the defendant in this suit; because the defendant, as shown by the bill, held these warrants as collateral security.    Defendants say their averment does not say so absolutely; but the ambiguity helps them none whatever. He who seeks to protect himself as a *bonâ-fide* purchaser, must set forth affirmatively in his plea or answer the facts constituting him as such.    But take the whole allegation together and there is no ambiguity.    The amended bill removes all doubt of that kind, in which Green is stated to have said that the warrants were taken to secure the payment of certain notes, and when they should be paid, the warrants were to be returned.

Angus McLeod *v.* First National Bank et al.

It will be seen, in those cases where a party receiving a note in good faith, in payment of an antecedent debt, and that will be protected, it is between the holder and some prior party to the note itself; as between such persons and the holder, it was held that they were cut off from their defence; otherwise, they would be enabled to falsify their obligations, and defeat the recovery of paper which they put into circulation.

In this case, the controversy is not between the parties to the note, but between the equitable owner of the security which a trustee has fraudulently used, and a party who claims under such trustee, who advanced nothing on the faith of the security received.

A conveyance of land in satisfaction of a debt, does not free it from antecedent equities. *Dickson* v. *Sillinghant,* 4 Paige, 215.

The warrants show on their face that they were trust funds. The defendants, therefore, had notice of it. In principle, this case and that of *Miller* v. *Helm* are the same. See, also, 2 Williams on Exrs.; 5 Rand. 195; 2 ib. 295; 11 Sergt. & Rawle, 377; *Powell* v. *Jones,* 2 Ired. Eq. 337, 344, 352; *Propert* v. *Leatherman,* 2 How. (Miss. Rep.) 237.

A purchaser from a trustee, for a valuable consideration, if he do so with notice, will be bound for the trust (Hill on Trustees, 3 Am. edit. 761); and there is no difference between actual and constructive notice. Ib. 763. A trust created by an act of the legislature carries notice to every one. Ib. 764. Whatever is sufficient to put a purchaser upon an inquiry, is good constructive notice. Ib. 768, and cases cited in notes *i* and *x.*

Defendants must deny notice, to sustain themselves against plaintiffs' title or claim. The denial must be positive, and made whether it is charged in the bill or not. Hill on Trustees, 3 Am. edit. 772, and cases cited in *l, m, n, o;* also in 1 Freem. Ch. Rep. 85; *Jenkins* v. *Bodly,* S. & M. Ch. Rep. 338.

*D. Sheldon,* for defendant in error, argued: —

The warrants were transferred before the bill was filed or

process served on the defendants; and consequently when this suit was brought the only ground for the recovery against the Greens was a personal liability. But counsel argues that the suit was brought from the time the first was ordered by the judge, more than a week before the bill was filed or process issued, as against the Greens; the case was *lis pendens* only from the time process was served.   33 Miss. 61.

It is true that the fund on which these warrants were drawn was a trust fund, held by the State.   5 Rev. Code, art. 33, 108. And this same statute makes them negotiable by endorsement. There was nothing to excite the suspicion of defendants or put them on their guard.   The only assumption to the contrary would be wrong; *i.e.*, that the law prohibited these warrants from being in the hands of Lyle, otherwise than as agent.   The treasurer shall draw the fund, &c., *in person*, or by an *attorney in fact*.   Act of 1856, § 3.   The sheriff can cash the order of a county treasurer on this fund.   Ib.   The boards of police may loan out their funds, &c.   Act of 1856, §§ 12, 85.   Besides these, there is nothing in the acts which would prevent the treasurer from receiving the money from a banker in Oxford and giving his draft for the fund at Jackson.

By any of these modes the auditor's warrant could very properly be in the hands of Lyles.

But if suspicion had arisen, where would defendants have gone for information?   Not to McLeod: his name was not on the paper.   The auditor recognized Lyles' right to the warrants. Lyles took them only as an absolute draft from him.   The bill does not charge notice of the bad faith of Lyles.   On demurrer, we only admit that they were trust funds.   They are negotiable paper.   The bill does not pretend that we knew Lyles held the warrants *as McLeod's agent*.   McLeod did not comply with the act of 1856, § 3, p. 142; and Green's position is the result of McLeod's negligence in placing over-confidence in Lyles, and the breach of his own fiduciary duty.   Lyles took them as a *bonâ-fide* owner, as a draft, and thus became the legal owner of them, and empowered to endorse them in his own name, and negotiate them.   The defendants are the *bonâ-fide* holders of the war-

rants, for a valuable consideration, &c., without notice, &c. The plaintiff has but an equity. The equity must be superior to the legal title to supersede it. Defendants hold legal title, possession, and superior equity, because they are *bonâ-fide* holders, without fraud, negligence, or breach, and through the wrongful act of plaintiff. He committed the fault, and not the defendants, and must therefore suffer for his own wrong and the perfidy of his agent. He made the bed: let him lie upon it. By the common law, the assignee of a chose in action takes it subject to all the equities of the original debtor, *but not to any latent equity residing in a third party against the assignor.* 2 Johns. Ch. Rep. 441 and 479; 1 Dow. Rep. 50; 2 Wash. Rep. 233 and 254. But this principle is limited, *vide* Rev. Code, art. 355; but this extends only to the adverse rights of *the original debtor*, and not to latent equities in favor of a third person. Having superior equities in the case, also the legal title, the defendants are sustained under the maxim, "*In æquali jure melior est conditio possidentis.*" 1 Sto. Eq. Ju. 64 c.

Counsel may urge that the Greens did not pay to Lyles any money for the warrants. The allegation of the bill is in the alternative, "either in *payment* or as *security.*" Receiving the warrants in *payment* of a pre-existing debt sustains our title against all latent equities. *Vide* 16 Pet. Rep. 11; Sergt. & Raw. 377; 11 Ohio Rep. 172, and references; 34 Miss. 63; 26 Miss. 573-4, which apply as well to cases of security as of payment. The cases to the contrary are in some of the early New York Reports. But the decision of the United States Court sets the matter at rest, and entirely covers both branches of the allegation in this case. *Swift* v. *Tysen*, 16 Pet. Rep. 1, which our own Supreme Court cite as authority with approval; 26 Miss. 573-4. The cases counsel cite to the contrary are all choses in action, and not applicable to negotiable paper; the rule governing each is wholly different. *Vide*, on this point, 16 Pet. Rep. 1, 11; 11 Ohio, 172.

McLeod is guilty of a breach of trust, and is liable in his bond to the county of La Fayette. 2 Sto. Eq. Ju. 126. The

county has the option to hold him thus liable, or to follow the property. Ib. 1262–3.

But against these principles counsel cite *Miller* v. *Helm.* In that case the paper contained notice to Poindexter, that the administrator held it only as such. He then took it with notice that it belonged to an estate of which he was administrator, and of which complainants were the distributors. Not so in the case at bar. The paper did not show that Lyles had it as agent of McLeod.

PEYTON, J., delivered the opinion of the court.

The complainant, in his original bill, states : That he was then, and had been, treasurer of the county of La Fayette, since the year 1845, duly elected and qualified, according to law. That in the month of May, 1867, he received a notice from the Auditor of Public Accounts, bearing date the 1st day of May, 1867, that there was then due, by the State of Mississippi, to the county of La Fayette, the sum of $13,259\frac{69}{100}, for interest on the Chickasaw School-Fund, for which, as county treasurer, he was authorized to draw, upon complying with the requirements of the law. That he duly obtained from the Clerk of the Probate Court of the county of La Fayette the certificate required by the act approved March the 7th, 1856, to entitle him to draw said School-Fund ; and finding it inconvenient to go to Jackson, for the purpose of drawing this money, he authorized and empowered one J. W. Lyles, who was about visiting Jackson, to receive said money from the State, as his agent, and to bring the same to him for the use of the county of La Fayette. That said Lyles was a gentleman of high character for integrity and honesty ; was engaged in the business of banking, in the town of Oxford, in the said county of La Fayette, and had high character for solvency and pecuniary ability, and was believed by complainant to be a safe, reliable, and prudent person, to entrust with the receipt and custody of said money, for the purpose of bringing the same to complainant, as county treasurer.

The complainant further states, that said Lyles applied to the Auditor of Public Accounts for the same, and on the 4th day

of June, 1867, the said auditor drew thirteen warrants, amounting to the sum of $13,259$\frac{69}{100}$, in favor of said Lyles, upon the treasurer of the State, which were received by said Lyles, who gave his receipt for the same. That, upon the return of said Lyles to La Fayette county, he informed the complainant that he had drawn the warrants for the money, from the auditor upon the treasurer, and that there was no money in the treasury, and they were not paid, and that he had deposited said warrants in the First National Bank of Jackson, for collection, and that they would be collected and paid when there was money in the treasury to pay the same. That in July, 1867, said Lyles departed this life, intestate, and administration upon his estate has been granted to William L. Lyles, who has duly qualified as such administrator. That on the 24th of July, the complainant ascertained that the said J. W. Lyles had said warrants payable to his own order, and that he had not deposited them with said bank for collection, but, on the contrary, had deposited the same in said bank, as collateral security for a personal and individual liability of said J. W. Lyles. That the complainant immediately proceeded to Jackson, to take the necessary steps to prevent the payment of the said warrants, and was informed that said Lyles deposited the said warrants with the said First National Bank of Jackson, either as collateral security, or in payment of certain liabilities or claims due and owing by said Lyles to the said bank, with an agreement that, on the payment of said claims by said Lyles, the said warrants should be returned to him. That the action of said Lyles in the premises was wholly unauthorized, and without any power or authority, and was a breach of trust reposed in him by complainant; and his acts relative thereto were illegal, and have given to the First National Bank of Jackson no right or authority to hold the said warrants, or to collect the same.

The complainant further states, in his bill of complaint, that the said warrants showed *on their face* that they were *trust funds*, and were issued on account of the interest due the county of La Fayette in the Chickasaw School-Fund; and also states from information, that said bank did not advance any money to said

Lyles for said warrants, but received the same either in payment or as collateral security for money lent or advanced previously, and that they took said warrants not in the course of trade, as *bonâ-fide* purchasers thereof, but only for the purpose of securing or obtaining payment of a pre-existing liability, in no wise created on the faith of said warrants. And that said bank are not the *bonâ-fide* holders and owners of said warrants, but they hold the same, subject to the rights of complainant and the county of La Fayette therein, and that said bank has no right in equity to collect the said warrants. That complainant fears that said bank will proceed to collect the same, and apply the money to their demands against said Lyles, unless enjoined from so doing, and prays that the First National Bank of Jackson, and Joshua Green, who is the president thereof, and Thomas Green, who is cashier thereof, and John H. Echols, the treasurer of the State of Mississippi, and William L. Lyles, administrator of the estate of J. W. Lyles, deceased, be made defendants to the bill of complaint, and they be compelled to appear and answer the same; and that an injunction be granted, restraining said Echols, as treasurer, from paying said bank, Joshua or Thomas Green, or any one else, the warrants aforesaid, and also enjoining and restraining the said bank, and Joshua and Thomas Green, from collecting and receiving payment of said warrants from the treasurer, and from transferring, selling, or disposing of the same, until further order of the court; and that the treasurer of the State be decreed to pay said warrants to complainant; and that Joshua and Thomas Green, and the First National Bank of Jackson, be perpetually enjoined from setting up any claim to said warrants or the proceeds thereof, and also be ordered and decreed to deliver the possession of the same to complainant.

And the complainant, in an amended and supplemental bill, further states that a fiat was granted for an injunction, on the 26th day of July, 1867, as prayed for in the original bill, and that on the 25th day of July, 1867, the complainant, by his attorney, informed said Joshua Green that he was the treasurer of the county of La Fayette, and that, as such treasurer, he had

authorized and empowered said Lyles to receive and collect the interest on the Chickasaw School-Fund belonging to the county of La Fayette, and to bring the same to complainant, as treasurer of said county, which he promised to do. That complainant then informed said Green, that said Lyles had no authority to use said warrants, and that they belong to complainant, as treasurer, and that the money belonged to the county of La Fayette, and that said Lyles acted only as his agent to collect and bring the money to him as treasurer as aforesaid. That said Green stated that he had received said warrants from said Lyles, as payment for moneys he had advanced to said Lyles and others, and claimed the same, under a transfer by said Lyles.

That, after the notice given by complainant on the 25th of July, as aforesaid, to the First National Bank, and to Joshua Green, president thereof, that said Lyles had no right to use said warrants, and after the fiat issued on the 26th of July for an injunction as aforesaid, the said Joshua Green, or the said bank, transferred the said warrants to the sheriffs of divers counties in the State, which said warrants the said sheriffs presented to the treasurer of the State, and paid the same to him, for taxes due the State by them.

The complainant insists that whatever money or other thing was received by the said bank, or the said Green, for said warrants, are trust funds, to be held by them subject to the rights of complainant, and that they have no right to use, transfer, or dispose of the same, and prays for an injunction, and the appointment of a receiver, and that the First National Bank of Jackson, and the said Joshua Green and Thomas Green, shall be declared to be trustees, and to hold in trust for complainant, as treasurer aforesaid, whatever money or other thing they may have received for said warrants, after notice, as aforesaid, and to account for the same to complainant.

The defendants demurred severally to these bills, and the demurrers were sustained by the court, and the bills dismissed. From this decree, the complainant brings the cause to this court by appeal, and assigns for error that the court erred in sustaining the defendants' demurrers to complainant's bills of complaint.

The equity of these bills can be destroyed only by showing that the First National Bank of Jackson, Joshua and Thomas Green, were *bonâ-fide* purchasers of the warrants for valuable consideration, without notice of the complainant's claim. And this defence can be made only by plea or answer.

The general doctrine is, that to constitute a *bonâ-fide* purchaser for valuable consideration without notice, he must have advanced some new consideration, either in money or property, have relinquished a pre-existing *security* for his debt, or have or done some act on the faith of the purchase itself, which can not be retracted. *Rollins* v. *Callender*, Freeman's Ch. Rep. 295; *Rowan* v. *Adams*, S. & M. Ch. Rep. 49; *Emanuel & Barnett* v. *White*, 34 Miss. 56–63; *Pope* v. *Pope*, 40 Miss. 516.

Whether the transfer of commercial paper constitutes an exception to this general rule, it is unnecessary at this time to determine. It must, however, be conceded, that it is certainly for the benefit of the commercial world, to give as wide an extent as practicable to the credit and circulation of negotiable paper. But whether it should pass in payment of, or as security for, pre-existing debts, so as to preclude prior equities, is very questionable, and about which there is considerable diversity of judicial opinion.

With regard to notice, the general doctrine is, that whatever puts a party upon an inquiry, amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to knowledge of the requisite fact, by the exercise of ordinary diligence and understanding.

In this case, the bills state the warrants showed *upon their face that they were trust funds*, and were issued on account of the interest due the county of La Fayette in the Chickasaw School-Fund, and that said warrants had been taken by the First National Bank of Jackson, either as payment of a pre-existing debt, or as collateral security for a personal and individual liability of said J. W. Lyles, and that they were not *bonâ-fide* holders of the said warrants, for valuable consideration without notice. These facts being admitted by the demurrers, it is

difficult to conceive upon what grounds the demurrers were sustained.

It is the well-established doctrine of equity, that a purchaser for valuable consideration with notice of the trust, and a purchaser without consideration, without notice, are in each case held to be trustees for the persons beneficially interested. It is a clearly established principle of equity jurisprudence, that whenever the trustee has been guilty of a breach of trust, and has transferred the property, by sale or otherwise, to any third person, the *cestui-que* trust has a full and perfect right to follow such property into the hands of such third person, unless he stands in the predicament of a *bonâ-fide* purchaser for valuable consideration without notice. And if the trustee has invested the trust property or its proceeds in any other property into which it can be distinctly traced, the *cestui-que* trust has his election either to follow the same into the new investment, or to hold the trustee personally liable for the breach of the trust. 1 Story's Equity, 514, §§ 533, 534, 9th edit.; *Oliver* v. *Piatt*, 3 How. U. S. Rep, 401; 4 Kent's Com. 307, 11th edit.

Lyles was in equity a trustee, and in passing off the warrants was guilty of a breach of trust; yet, if the bank or the Greens took them *bonâ fide*, and for valuable consideration without notice of the trust, they held them divested of the trust; but if they received them with notice of the trust, or without consideration, they took them clothed with the trust.

Upon the whole, we think the court below erred in sustaining the demurrers and dismissing the bills.

The decree will therefore be reversed, the demurrers overruled, and cause remanded, with leave granted to defendants to answer the bills within sixty days from this time.