Dickman, J.
Daring the years 1883 and 1884, Frederick Eaton, the plaintiff in error, was doing business as a wholesale dealer in dry goods and other merchandise at Toledo, Ohio, under the name and style of Frederick Eaton & Co.; and J. F. Davidson, during the same period, was engaged in business as a retail merchant, at West Unity, in Williams county, Ohio. Frank Davidson, a son of William E. Davidson, the defendant in error, had charge of the retail store at West Unity, was the 'confidential clerk and authorized agent of J. F. Davidson, ■bought all goods for his stock in trade, and had the general management of his business. On or about November 7, 1883 and at divers times thereafter down to and including April 24, 1884, J: F. Davidson, by and through the false and fraudulent representations of his agent and nephew Frank Davidson, obtained by purchase and on credit, a large quantity of goods •and merchandise from Eaton, and the same became a part of the stock in his store'. Although J. F. Davidson became cognizant of such fraudulent representations immediately after ■they were made, he did not repudiate them, but permitted Eaton to believe the same to be true, and to act upon them accordingly.
On August 7, 1884, J. F. Davidson was insolvent, and at that time was indebted to Frank Davidson, for wages, in the sum of $370; to Isadore F. Webb in the sum of $359.28, on *360 anote executed to Webb by himself aud William E. Davidson as surety; to Belinda Grant in the sum of $522.75, on a note made to her by himself and William E. Davidson as surety; and was further indebted in the sum of $3,000, to his brother William E. Davidson, on' his promissory note to him for that amount, dated October 8, 1883, and payable in one year after date, with interest. He also at the time owed Frederick Eaton, on the goods which he had purchased of him through Frank Davidson, a balance of $1,156.63, with interest from June 5, 1884.
Being thus insolvent, J. F. Davidson, on August 7, 1884, proposed to William E. Davidson to transfer to him all the goods, wares and merchandise in his store at West Unity, if he would pay the Webb and Grant notes, pay Frank Davidson the amount due him, and cancel his own claim of three thousand dollars. The proposition was accepted — the contract was made — and J. F. Davidson turned the store and its contents over to William E. Davidson, who thereafter in pursuance of the agreement, cancelled his claim for $3,000 and paid the claims of Isadore F. Webb, Belinda" Grant and Frank Davidson.
It is conceded that the design of William E. Davidson in taking the stock of goods, was to secure himself from loss by reason of the note which he held for three thousand dollars, and to save himself harmless on accout of his liability on the notes to Webb and Grant.
Shortly after August 7, 1883, Eaton discovered the fraudulent character of the purchases from him by J. F. Davidson, and thereupon demanded the return of the goods from William E. Davidson, who was then in possession of the same, which being refused, Eaton at once commenced the original action in replevin for their recovery. Under the writ of replevin the sheriff took goods and merchandise valued at from $700 to $900, but through mistake some goods were taken to which at the trial Eaton made no claim. The case was tried to a jury. A verdict was rendered for the plaintiff for all the goods replevied, except those taken by mistake, and as to them, the verdict was in favor of the defendant William *361 E. Davidson, assessing his damages at three hundred and fifty-five dollars and twenty-eight cents. Judgment was duly entered on the verdict, and the circuit court, on error, reversed the judgment.
The circuit court held that the court of common pleas erred1 in charging the jury as follows:
“But if you find that the consideration paid for such good» was in part the release of a pre-existing debt, owing by said John E. Davidson, to said William E. Davidson, as to such part and parcel of the consideration it was not, as to so much of the purchase-price of said goods covered by said pre-e'xisting debt, a valuable consideration such as would protect his title as an innocent purchaser, as to such part paid for by the release of such pre-existing debt; and to that extent, if you find the goods were fraudulently obtained from the plaintiff as claimed by plaintiff, then as to so much of said goods as were paid for in that way, the plaintiff would be entitled to' your verdict,”
And it was further held by the circuit court, that the court of common pleas erred in charging the jury, as requested by the plaintiff, as follows:
“But if the jury find that the defendant, William E. Davidson, so received said goods from John F. Davidson, sufficient in value to fully and fairly equal in amount the sum so assumed and paid by him, independent of the amount of goods replevied by plaintiff in this action, then the said William E„ Davidson is not entitled to recover herein, except as to such goods as were not sold and delivered by plaintiff to John F. Davidson by reason of said fraud, if you find there was such fraud as is claimed by the plaintiff, or were so delivered and were subsequently paid for by said John F. Davidson.”,
We do not think that the eourt erred in giving these instructions to the jury, nor in giving or refusing to give the other charges to the jury as assigned for error in the circuit court.
The - question to be determined in the case before us is, whether the defendant was a bona fide purchaser, for valuable consideration, without notice of the fraud by which his vendor *362 obtained the goods replevied in the action. As against his vendee, Eaton, who was induced to part with his goods by fraud, can not be defeated of his right to rescind the sale and reclaim his property.
But such right can not continue as against any one who purchases the property from the fraudulent vendee, bona fide, for value, and without notice. As a general rule, a person who has no title to property can convey none, but where one sells property to a fraudulent vendee, and clothes him with the insignia of ownership, the purchaser in good faith and for value from’ such vendee — being an innocent party no less than the original vendor who has been defrauded — may demand the application of the rule, that of two innocent persons, he musí suffer who has placed the other in the power of the wrongdoer. In such case, the equitable, rule will estop the first’vendor from setting up his title.
But as said in Barnard v. Campbell, 58 N. Y. 79, “There is no good reason or equity in placing the burden of a fraudulent sale upon a bona fide vendor rather than upon a bona fide purchaser from the fraudulent vendee, unless the purchaser has parted with his money, or some value, upon the credit of possession or some evidence of title in the vendee, received from the original owner.” In other words, the purchaser who would acquire an indefeasible title, if he buys from one who has obtained the property through fraud, must buy for an adequate, valuable consideration.
Such a consideration, in our judgment, was not given for the goods in controversy, purchased from J. F. Davidson by the defendant. In apportioning the consideration given by the defendant, for the goods transferred to him August 7,1884, it is proper that the sum at that time assumed and paid by him — amounting to $1,251.98 — should be applied to that portion of the stock of goods to which the transferee would acquire an undisputed title. After such application, there remained the pre-existing debt of $3,000, in the form of a promissory note, applied as the consideration for the residue of the goods, including those replevied.
*363 Where a fraudulent vendee transfers goods to a bona fide ■creditor in consideration of a pre-existing debt, no title is conferred as against the defrauded vendor, who may avoid the sale to the vendee, and recover the goods from the assignee or transferee. Root v. French, 13 Wend. 570.
In Weaver v. Barden, 49 N. Y. 286, the defendant received •certain shares of capital stock in a corporation, partly in payment of a precedent debt and partly for a consideration paid at the time. The court in rendering its opinion said, that the situation of the defendant was in no respect changed by the transaction, and that he was not to be regarded a holder for value, so far as the assignment of the shares was received in part payment of the precedent debt. In Sargent v. Sturm, 23 Cal. 361, it is stated as the rule, that he who receives goods from a fraudulent purchaser in payment of a pre-existing ■debt against such fraudulent purchaser, can not hold them against the vendor. See also Hyde v. Ellery, 18 Md. 496; McLeod v. First National Bank, 42 Miss. 99.
If the consideration of the purchase from the fraudulent vendee is the release of a pre-existing debt, the purchaser will ■be restored to what he may have yielded up, if the original ■owner who has been defrauded reclaims and recovers the property. The consideration having failed, it will be the right of the purchaser to be placed in statu quo, and the •courts, in the exercise of their remedial power, will be adequate to furnish him the needed relief, even though, as in the present case, there may have been a surrender of a promissory note. The purchaser will not, therefore, be materially affected in his legal rights, by the retaking of the goods by the original owner.
But, perhaps, it may be said, that although there was no new consideration in money or property, the defendant in ■surrendering the note for $3,000, relinquished a personal security, and thus gave a valuable consideration for the goods ■claimed by the plaintiff in error. The surrendered note was without indorser, guarantor or surety, and while it furnished •clearer evidence of the maker’s indebtedness than a promise ¡resting literally in parol, it was not. equivalent to a new and *364 present consideration, but represented a pre-existing debt. It is undisputed, that to the extent of Eaton’s recovery of his goods and merchandise, the defendant may have his appropriate remedy against the fraudulent vendee, J. F. Davidson ; and although such remedy may be against an insolvent, the defendant’s situation in that regal’d, will not be different from what it was when he surrendered the note of three thousand dollars.
The defendant invokes the doctrine of equitable estoppel as against Eaton, and asks that the property of which Eaton was defrauded, shall be applied in part payment of his claim. It is not contended, or even intimated, that the defendant was induced to lend money or give credit' to J. F. Davidson, by reason of his ostensible ownership of the goods which the plaintiff had sold him, for the goods were not bought of the plaintiff until after the note of $3,000, was executed to the defendant. The facts would rather serve to indicate, that J. F. Davidson purchased the goods on credit from the plaintiff, in view of probably transferring them to his brother, the defendant, in payment of pre-existing obligations. Applying analogous principles established in this state, in the voluntary transfer of a negotiable instrument as collateral security for a pre-existing debt, this court, in Lewis v. Anderson, 20 Ohio St. 281, held, that where there is no consideration for a mortgage of real estate, other than- a pre-existing debt of the mortgagor, and the mortgagee is not induced thereby to change his condition in any manner, he can not be regarded as a purchaser for value, and therefore is not entitled to the protection against prior liens afforded in equity to bona fide purchasers, although he had no notice of such liens. If a pre-existing indebtedness was thus deemed an inadequate consideration from a mortgagee who held subject to the equity of redemption, still more so would it be from one who claims the absolute ownership of the property against all prior equitable lien-holders. “As a general rule,” says Chancellor Walworth, in Padgett v. Lawrence, 10 Paige, 180, “a purchaser of the legal title, who receives his conveyance merely in consideration of a prior indebtedness, is not entitled to protection ; *365 because he has lost nothing by the purchase.” And in the same line of reasoning, Day, J., in Lewis v. Anderson, supra, says, “ The equity in favor of a bona fide purchaser is based as much upon the idea that he parted with value on the credit of the land, as it is that he was ignorant of the infirmity of the title. Hence the rule is not available to a judgment creditor who has no notice of a prior equity, as he comes in under the debtor, and upon no consideration like a purchaser.” The rule by which a pre-existing indebtedness of the mortgagor, as a consideration for a mortgage of real estate, would not be sufficient to constitute the mortgagee a bona fide purchaser for value, as against prior liens in equity of which he had no notice, may upon principle be extended to a transfer of personal property. By analogous reasoning it may be deduced, that 'a pre-existing debt will not be a sufficient consideration to constitute a purchaser of personal property fraudulently obtained by his vendor, a bona fide owner, as against the one from whom it was obtained by fraud.
In New York, the decision of the court of errors in the early and leading case of Coddington v. Bay, 20 Johns. 637, was re-examined by the same court in Stalker v. McDonald, 6 Hill, 93, and it was there declared as the principle established in Coddington v. Bay, that to protect the holder of a negotiable note whjch had been passed to him before maturity in fraud of the rights of others, he must not only have taken it without notice, but must also have parted with something of actual value, upon the credit or faith thereof; and that merely receiving it in payment of an antecedent debt, where by the settled rules of equity he would not be protected as a bona fide purchaser of property in other cases, was not sufficient. But in Carlisle v. Wishart, 11 Ohio, 172, it was held, that a precedent debt is a sufficient consideration for the transfer of a negotiable note before it falls due, to protect the holder without notice, against the equities of the original parties. And in Roxborough v. Messick, 6 Ohio St. 448, the opinion was expressad by the court, that the weight of authority seems to settle the principle, that where a negotiable instrument of a third person is transferred before due, in pay- *366 merit of a pre-existing debt, and is bona fide received by the creditor, without notice, the defense existing as between the prior parties, can not be set up against such holder.
Thecrule indeed is apparently settled, that an antecedent-debt may be an adequate consideration in the transfer of negotiable instruments, when it would not be in a transfer of other personal property. The policy of the law is to facilitate the circulation of commercial paper, and thereby promote the interests of trade and commerce. Negotiable instruments-are excepted from the universal principle with regard to other property, namely, that only he who has a title himself to a personal chattel can convey one to another. And the bona fide assignee for value of even a stolen note, who takes it innocently, in the course of trade, and not overdue, and under circumstances of due caution, will have a valid and complete title in it, although his trasferer had no title whatever. 3 Kents’Comm. 79, and cases cited. “The necessities, of the commercial world require that bills of exchange and promissory notes should possess some of the attributes of money and exchangeable value ; and to clothe them with these attributes,, and to give parties confidence in their reception, it is necessary to protect them in the hands of a holder for value, from defenses growing out of the dealings of the prior parties. The rule frequently operates harshly and unjustly, and being founded on commercial policy, is, therefore, applicable only where the interests of trade require it.” Swan, J., in Roxborough v. Messick, supra. In Weaver v. Barden, supra, the court say, “ The claim to distinguish between commercial instruments and other choses in action and property interests has been based upon the supposed interests of commerce and the necessity of giving the freest circulation to instruments so-generally used in commercial transactions.” “ And why upon principle ” says Mr. Justice Story in Swift v. Tyson, 16 Peters, 20, “ should not a pre-existing debt be deemed such a valuable consideration ? It is for the benefit and convenience of the commercial world to give as wide an extent as practiable to the credit and circulation of negotiable paper, that it may pass not only as security for new purchases and *367 advances, made upon the transfer thereof, but also in payment of and as security for pre-existing debts.” See also McLeod v. First National Bank, 42 Miss. 112. Obvious reasons therefore are not wanting for the distinction between commercial paper and other property, when the consideration for an assignment or transfer of the same is an antecedent debt.
In our opinion the judgment of the circuit court should be reversed, and that of the court of common pleas affirmed.

Judgment accordingly.