CHARLES L. BINGHAM, Receiver, etc., Respondent, *v.* JOHN HYLAND, Impleaded, etc., Appellant.

*N. Y. Supreme Court, Fifth Department, General Term, June* 21, 1889.

1. *Deed. Priority.*—A party who takes a conveyance, either in payment of or as security for, a pre-existing debt, is not a purchaser for a valuable consideration, within the meaning of the recording act; and such conveyance, though taken without notice, does not acquire a priority over a prior unrecorded deed.

2. *Evidence. Finding.*—The finding of the trial court in accordance with the uncontradicted testimony of the grantor that a lost unrecorded deed was executed and delivered prior to a recorded deed of the same premises, will not be disturbed on appeal.

3. *Same. Declarations of grantor.*—The declarations of a grantor against his proprietary interest, while in possession of the property and before the conveyance thereof, are admissible against such grantor and all persons claiming under him.

Appeal from a judgment entered on the decision of the court at special term.

*J. A. Vanderlip*, for appellant.

*J. N. Beckley*, for respondent.

DWIGHT, J.—The action was, in equity, to establish title to certain real estate in the plaintiff, as receiver of the First National Bank of Dansville, under an alleged lost and unrecorded deed from James and Samuel D. Faulkner to the bank; and to have a subsequent recorded deed from James Faulkner of his interest in the same real estate to the defendant Hyland, and the record thereof declared null, void, and of no effect, as against the bank and the receiver.

Title in the alleged grantors of the bank, at the date of their supposed deed, was admitted; also, in effect, that but for the alleged deed to the bank, title to an undivided six

tenths of the real estate was in James Faulkner at the date · of his deed to Hyland. It was also conceded, as Hyland himself testifies, that "when this deed was delivered me I gave Mr. Faulkner no money, nor any obligation of any kind, nor agreement to pay money, nor surrendered any obligation to him; it was simply a voluntary act on his part to secure me for a pre-existing debt."

These admissions, we suppose, limited the material inquiry in this case to the single question, whether the alleged prior unrecorded deed was, in fact, executed and delivered by the supposed grantors to the bank. If so, the subsequent deed, by one of the same grantors, to the defendant could be of no effect except by virtue of the recording act; and, under the admission of the defendant's evidence quoted above, his deed was not within the benefit of that statute, because, though he were "a purchaser in good faith," that is without notice of the prior unrecorded deed, he was not "a purchaser for a valuable consideration." Proof of that fact could hardly be more explicit or conclusive than that made by the evidence given by Hyland himself. His whole narrative of the antecedent and immediate circumstances of the transaction fully bears out the statement in which he sums up the character of the transaction itself in the words, "it was simply a voluntary act on his (Faulkner's) part to secure me for a pre-existing debt." One who takes a conveyance, either in payment of, or as security for, a pre-existing debt, is not a purchaser for a valuable consideration, within the meaning of the recording act. Weaver *v.* Barden, 49 N. Y. 286; Cary *v.* White, 52 id. 138; Webster *v.* Van Steenbergh, 46 Barb. 211; Westbrook *v.* Gleason, 79 N. Y. 23, 28; Young *v.* Guy, 87 id. 457, 462.

To be such he must part with value on the faith of the purchase; he must pay the purchase money or some part of it, or give security for its payment, or deliver something of value in consideration of the conveyance; or, if the transaction is by way of payment or security for a pre-existing

indebtedness, he must surrender other securities which he holds for the same, or, by express agreement extend the time of payment. The rule in this respect, under the recording act is the same as under the law merchant in respect to the transfer of negotiable paper. Weaver v. Barden, (supra). The transferee of such paper takes it discharged of equities in favor of the maker, only when he takes it in good faith, and for value, that is, without notice of such equities, and upon the present payment or rendering of a valuable consideration. See Weaver v. Barden, (supra,) 293 295, and the cases cited.

We should not have thought it necessary to dwell, or cite authorities upon the question of the nature of the consideration necessary to bring a subsequent purchaser within the benefit of the recording act, but that the learned counsel for the appellant seemed to be laboring under the impression that the rule was otherwise than as shown by the authorities cited. Under the rule as stated, it was not necessary for the plaintiff to show that the defendant had notice of the prior unrecorded deed.

The question whether the alleged deed was, in fact, executed and delivered was an issue of fact of which the affirmative was supported by the direct testimony of James Faulkner, one of the alleged grantors, the other being dead. Evidence was also received, under the objection of the defendant, of oral and written declarations of James Faulkner before his deed to Hyland and when if the deed to the bank had not already been executed and delivered, he was in possession of the property as owner, to the effect that title to the property was in the bank. All this evidence was substantially uncontradicted. The court is asked to hold that it did not constitute a fair preponderance of the competent and credible evidence in the case, on the ground that James Faulkner's testimony was unworthy of credit, and that his declarations were inadmissible against the defendant Hyland. On the question of credit, attention is

called to the motive of Faulkner to testify falsely, to the character of his testimony, and to his manner in testifying. All these were proper considerations to urge upon the attention of the trial court, and, if the case were one of closely balanced evidence, might possibly justify the court of review in setting aside the finding of fact.

But in this case, as has been said, the evidence in question is substantially uncontradicted, and the considerations urged against its credibility could be more thoroughly appreciated by the court which saw the witness, and heard his testimony, than by us who see and hear him only through the imperfect medium of the printed page. The court below gave credit to his testimony, and the case is not one in which we feel justified in coming to an opposite conclusion.

The property in question was the building and lot in Dansville, occupied by the bank from its organization. It was the property of the two brothers, James and Samuel D. Faulkner, to whom the bank paid rent before the date of the alleged conveyance in or before 1876, after which time, as James testifies, the bank received the rent from the other tenants of the building. James Faulkner was cashier of the bank; his father, James, Sr., was president, and his brother, Samuel D., one of the directors. In 1876 the report of the cashier to the comptroller of the currency, attested by James Faulkner, Sr., and Samuel D. Faulkner, as directors, including the banking house, among the assets of the bank, and all similar reports made after that date and before the suspension of the bank, contained a similar entry. Samuel D. Faulkner died in 1878, and James, Sr., in 1884, after which the present James Faulkner became the president of the bank.

Several of the reports and published statements of the character above mentioned were received in evidence under the objection of the defendant, as were also declarations of James Faulkner made to the bank examiner in 1886 and

1887, before the execution of the deed to Hyland, to the effect that the deed in question had been executed to the bank. The last mentioned declarations were received only as against the defendant James Faulkner, but we think all the evidence of the three classes mentioned was competent against Hyland as declarations of a grantor, while in possession of the property, before the conveyance to the defendant, and against his (the grantor's) proprietary interest. Such declarations are held to be admissible against such grantor and all persons claiming under him. Chadwick *v.* Fonner, 69 N. Y. 404, and the cases cited; Waring *v.* Warren, 1 Johns. R. 340.

The weight and probative effect of such declarations must, of course, depend largely upon their character, and the circumstances under which they are made, but that they are competent evidence in this case, against the defendant Hyland, as a person claiming under the declarant, seems to be established by the cases cited. It may also be noticed that Hyland claims under both James Faulkner, Sr., and Samuel D. Faulkner, because if there was no conveyance to the bank, James Faulkner inherited the undivided half of his son Samuel D., who died, before his father, intestate and without issue ; and James took a share of such undivided half under a general residuary clause in his father's will.

The rule stated above, therefore, seems to apply to the declarations of both James Faulkner, Sr., and Samuel D. Faulkner, contained in the reports and statements signed by them.

We think there was no error on the trial, in the admission of evidence, to the prejudice of the defendant.

The judgment should be affirmed.

BARKER, P. J., concurs ; MACOMBER, J., not sitting.