THE CITY OF ONEIDA, Plaintiff, v. FRANK C. DRAKE, Individually, and as Executor, etc., CLARA E. DRAKE, as Executrix, and CATHERINE V. DRAKE, Defendants.

Supreme Court, Madison County, December 26, 1928.

*Coley & Kiley,* for Frank C. Drake.

*M. B. Hall,* for Clara E. Drake and as guardian *ad litem* for Catherine V. Drake, a minor.

SENN, J.    A tract of land, being a portion of a farm lying in the so-called outside tax district of the city of Oneida, was condemned and appropriated for the use of the city as a site for a reservoir in conjunction with the new system of water supply.   There being a dispute as to the title to the property appropriated, the sum of $3,846.50, awarded as damages, has been paid to the treasurer of the county of Madison, subject to the order of the court.   Frank C. Drake (Dr. Drake) claims that this money should be paid to him, as owner of the farm.   This is contested by Clara E. Drake, as executrix of James B. Drake, deceased, but especially on behalf of Catherine V. Drake, a minor.

Ella F. Drake, wife of Dr. Drake, died on March 14, 1916, being the record owner of two adjoining farms, from one of which the reservoir site was taken.   She received this title through the will of her father, James N. Bates, who concededly had the record title and owned the same at his decease.   By her will, now in force, Ella F. Drake gave to her husband the use of one-third of all her property during his lifetime.   Subject to this, her entire estate was given to James B. Drake, a son and only heir at law. The husband and son were named as executors.

James B. Drake died on September 13, 1921, leaving a will in which, after certain specific devises of real estate, other than that in question here, he gave to his wife, Clara E. Drake, an undivided one-third of all his remaining property, to be hers absolutely. He left one child, Catherine V. Drake, to whom the will in effect gave the remaining two-thirds, to be hers when she arrives at the age of twenty-one years; the income of said two-thirds was given to the wife during Catherine's minority for her support, etc., unless she (the widow) remarries before that time, in which case

she would forfeit said income. Should the child die before arriving of age leaving no issue, then her share (two-thirds) is given to said Clara E. Drake absolutely. Said Clara E. Drake and Frank C. Drake are the executors of this will.

Considering this record and these facts alone, Dr. Drake would only be entitled to the income from one-third of the money in question during his lifetime or perhaps a gross sum in lieu thereof; Clara E. Drake would be entitled to one-third of the same absolutely, subject to the life use of Frank C. Drake in one-third of said third, and Catherine V. Drake would be entitled to two-thirds of the same absolutely, subject to the life use of Frank C. Drake in one-third of said two-thirds and further subject to her mother's use of the same during her minority.

But it is claimed for Dr. Drake that he is the owner of the land in question and, therefore, of the money, by virtue of a deed executed and delivered to him by Ella C. Drake in her lifetime. Dr. Drake claims that this deed, which was never recorded and cannot now be found, was left by him with E. L. Hunt, his attorney, now deceased, at a time (1916) when he was being sued on account of a very serious automobile accident in which he was involved and the damages claimed were greatly in excess of the liability insurance carried by him.

There is no competent evidence in the case that such a deed ever existed. Dr. Drake attempted to testify to its execution and delivery, but was of course precluded under section 347 of the Civil Practice Act. There is a possible inference that Mr. Hunt either lost or destroyed the deed during the pendency of the damage suits, but no such proof was given or offered and Dr. Drake did not offer any definite explanation as to what efforts he had made to find the deed, either before or after Mr. Hunt's decease, or after the damage suits were disposed of. Evidence was given that before her decease, Ella F. Drake made certain disposition of property in favor of her son, James B. Drake, which was offered on the theory that the deed to Dr. Drake was given pursuant to Mrs. Drake's plan to make a fair division of her property between her husband and son. However, there is no evidence in the case evincing such a plan or intention.

The only evidence in the case which has any tendency to support Dr. Drake's claim is found in the proceedings for the assessment of the transfer tax in the Ella F. Drake estate. This took place in 1916 while James B. Drake and Frank C. Drake were still acting as joint executors and they both appeared before the county treasurer in that proceeding. The petition in that proceeding, which was verified by Frank C. Drake only, among other things

contained a list of the items of real estate claimed to have been owned by Ella F. Drake at her decease, but did not mention the two farms in question. Mr. Clark, the county treasurer, inquired as to these farms, whereupon James B. Drake replied that they belonged to his father and were not put in as part of the estate. After that the tax was assessed and paid without the two farms having been included.

After this there was a supplemental petition in the same matter in which it appeared that some asset of personal property had by inadvertence been omitted, and a supplemental decree assessing a small additional tax, but in that proceeding there was no mention of the two farms.

Besides, there was offered in evidence a typewritten paper dated March 31, 1918, signed " James B. Drake, executor " (the date and signature being in the handwriting of James B. Drake), which purported to be a statement of the assets and liabilities of the Ella F. Drake estate. It set forth, among other things, a list of the real estate, but did not mention the farms in question. This paper had not been filed or used in any court and the purpose for which it was made does not appear, unless inferentially.

It was also shown that the farms in question had been assessed to Dr. Drake, but it was not shown that they were so assessed during the lifetime of Ella F. Drake, although other farm land, on the opposite side of the highway, was assessed to him during her lifetime. After her decease, not only these farms, but other real property, concededly not his and never claimed by him, have been assessed to Dr. Drake. Parts of assessment rolls going back to the year 1912 were placed in evidence, but I find nothing in them to corroborate Dr. Drake's claim to the farms in question.

By a deed dated November 30, 1921, acknowledged December 2, 1921, recorded on December 5, 1921, Clara F. Drake, individually and as an executor of the James B. Drake will, and Frank C. Drake, as executor under the will of Ella C. Drake and of James B. Drake, deceased, in consideration of one dollar, purported to convey to Frank C. Drake the farms in question. Of course, this deed was of no legal effect, except as to the individual interest of Clara F. Drake, who is doubtless estopped from questioning the same in her individual capacity. It appears from Dr. Drake's testimony that she did this in deference to his claim of a lost deed and to " clear up the title."

I have said that there was no competent proof that Dr. Drake ever held a deed to the property in question. Even such proof as was offered, if competent, would hardly suffice.

" Parol evidence to establish the contents of a lost deed should

be clear and certain. It should show that the deed was properly executed with the formalities required by law, and should show all the contents of the deed, not literally, but substantially. If anything less than these requirements would suffice, evil practices, which it was the object of the statute of frauds to prevent, would be encouraged." (*Edwards* v. *Noyes*, 65 N. Y. 125, 127.)

In *Lawyer* v. *White* (198 N. Y. 318) it was held that the statute (Code Civ. Proc. § 829) did not preclude the grantee of an unrecorded deed from a deceased grantor from giving her testimony as to extraneous facts from which the execution and delivery of the deed could be inferred. But this was after there was proof of the fact of its execution by the testimony of the lawyer who prepared the deed and attended to its execution and who kept it in his office for several years. Proof was also given by other witnesses that the deed was delivered to the grantee. It was held that after this she could testify to facts as to what was done with the deed before its destruction by the grantor and to facts from which notice of its existence by a subsequent grantee could be inferred.

Under this authority, if there had first been due proof of the execution and delivery of this deed to Dr. Drake by his wife, it would have been competent for him to give the testimony he did as to the leaving of the deed with Mr. Hunt, and the circumstances, but there being no proof that the deed ever existed, this testimony was superfluous and of no evidential effect.

The statement made by James B. Drake to the county treasurer was competent as an admission by him, a declaration against his own interest and would have been valuable evidence if there was otherwise any doubt about the title to the property claimed.

The general rule is that declarations of a party in disparagement of title to property of which he is in possesion, claiming to be the owner, or otherwise interested therein, are competent. (1 Ency. Ev. 510, citing *Jackson* v. *Bard*, 4 Johns. 230; *Spaulding* v. *Hallenbeck*, 35 N. Y. 204; *Jackson* v. *McCall*, 10 Johns. 377, and other cases.)

In *Jackson* v. *Bard* (*supra*) there was an antedated deed. *Spaulding* v. *Hallenbeck* (*supra*) was a case of an alleged breach of condition, and *Jackson* v. *McCall* (*supra*) related to parol admissions as to the true boundary line.

But parol admissions are inadmissible to prove or disprove a written record title to real estate. (1 Ency. Ev. 518, citing among other cases, *Jackson* v. *Shearman*, 6 Johns. 19; *Gibney* v. *Marchay*, 34 N. Y. 301.)

Parol declarations of the owner of land are inadmissible as evidence to defeat his title. (*Marsh* v. *Ne-Ha-Sa-Ne Park Assn.*, 18 Misc. 314.)

While incompetent to prove a grant, " such declarations of a prior owner are received to explain seizin, or to qualify possession, especially as between persons in joint or contiguous occupancy." (*Ralston* v. *Lush*, 181 App. Div. 894.)

In *Jackson* v. *Vosburgh* (7 Johns. 186) it was held that parol evidence of a disclaimer of title to real estate was inadmissible, and this was as against a living person.

In *Jackson* v. *Miller* (6 Cow. 751) it was held that a disclaimer of title was not admissible to prove or disprove title. Prior possession is *prima facie* evidence of title in an action of ejectment but will not avail against a title unless it (the possession) was for twenty years or more and sufficient to amount to title by adverse possession.

*Chadwick* v. *Fonner* (69 N. Y. 404) holds competent an admission by a deceased owner of real estate that he had sold it by contract, but this was a case where the only controversy was whether the purchaser was to pay thirty dollars an acre or only twelve dollars an acre.

In *Bingham* v. *Hyland* (6 N. Y. Supp. 75; 53 Hun, 631) Bingham, as receiver of the Dansville Bank, sought to uphold a deed from Faulkner, a former owner, to the bank, which had not been recorded and was alleged to have been lost. After the deed to the bank, Faulkner deeded to Hyland who recorded his deed. The deed to Hyland was in consideration of an antecedent debt. Faulkner, as an officer of the bank, had made several reports to the Comptroller of the Currency, in which the real estate in question was listed as an asset of the bank. This report was held competent proof to corroborate Faulkner, who was a witness for the bank and one of the grantors in each deed, on the ground that it was a declaration made by him against his interests. This might to an extent be a case for Dr. Drake, the claimant, except that here was a living witness testifying to the execution of the deed by himself.

In *Jackson* v. *Shearman* (*supra*) the court said: " These acknowledgments of the party as to title to real property, are generally a dangerous species of evidence; and though good to support a tenancy, or to satisfy doubts in cases of possession, they ought not to be received as evidence of title. This would be to counteract the beneficial purposes of the Statute of Frauds."

This so-called Statute of Frauds is in part embodied in section 242 of the Real Property Law of the State of New York, as follows: " An estate or interest in real property, other than a lease for a term not exceeding one year, * * * can not be created, granted, assigned, surrendered or declared, unless by act or opera-

tion of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing. But this section does not affect the power of a testator in the disposition of his property by will."

This section really comprehends the whole matter. Reading it in the light of the authorities and of its own language, Dr. Drake has no title to the land involved and so none to the money claimed, except that which the will of Ella F. Drake and the deed from Clara E. Drake gives him. The deed only gives him the interest which Clara E. Drake takes under the will of James B. Drake.

I make this decision somewhat unwillingly because I believe that there is a certain element of justice in Dr. Drake's claim which, however, cannot be supported in law or the principles of equity applicable thereto.

An order in conformity with this holding may be submitted.